ORANGE MERWIN, TRUSTEE, APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, April Term, 1902.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

General Statutes, § 629 (Rev. of 1902, § 395), provides for the distribution of intestate estates by three disinterested persons to be appointed by the Court of Probate, unless all parties interested in the estate shall make and file in said court a written instrument of division, executed and acknowledged like deeds of land. *Held*, that in respect to the personal property, a strict compliance with one of the two statutory modes of distribution was not essential in order to relieve the administrator from liability to creditors for after-accruing claims; that it was enough for his protection that a correct and satisfactory division of the property had been made among those legally entitled to it, at the proper time, pursuant to an oral understanding between them, before the claim in question accrued or was presented.

Argued April 22d—decided June 6th, 1902.

APPEAL from the refusal of the Court of Probate for the district of Bridgeport to order an additional bond to be given by the administratrix on the estate of Bennett Seeley, deceased, taken to the Superior Court in Fairfield County and

Merwin, Trustee, Appeal.

tried to the court, *Ralph Wheeler, J.;* facts found and judgment rendered confirming the action of the lower court, and appeal by the applicant for alleged errors in the rulings of the court. *No error.*

April 25th, 1899, Bennett Seeley died, intestate, leaving a widow and only child, the latter of whom became the duly appointed and qualified administratrix upon his estate. The inventory showed estate amounting to about $17,000, of which $5,000 was in realty and about $12,000 in personalty, only a part of which was cash. The administratrix proceeded with legal regularity in the settlement of the estate, and on May 29th, 1900, exhibited her final administration account to the Court of Probate. On June 8th, 1900, said account was duly accepted and approved. The court thereupon made and delivered to said administratrix the certificate of inheritance touching real estate, required by statute, stating that the estate had been settled and that the real estate had descended to her, subject to the dower interest of her mother. This certificate was recorded a few days later. The court also passed an order in which, after reciting the settlement of the final account and the amount of both real and personal estate left for distribution, the heirs-at-law and distributees are found to consist of said only child and said widow, to whom the deceased was married prior to April 20th, 1877, and it was ordered that said real and personal estate be distributed among said heirs and distributees according to law.

Said mother and daughter thereupon made an oral mutual distribution between themselves of said personal estate to their mutual satisfaction, and the administratrix in good faith actually turned over and delivered all of it, pursuant to said distribution, to the parties entitled to receive it under said order of probate, who have ever since held it as their own. Some months after this was done, there unexpectedly developed a claim against the deceased upon a bond upon which he was a surety. This claim, in the amount of $32,000, was thereupon presented to the administratrix for allowance and payment, and suit brought thereon. This application followed.

*Stiles Judson, Jr.,* for the appellant (Merwin, trustee).

*Curtis Thompson* and *Albert M. Tallmadge,* for the appellee (Carrie Seeley, administratrix).

PRENTICE, J. The question in this case rests upon the meaning and effect to be given to the provisions of § 629 of the General Statutes, Rev. of 1888. These proceedings are incidental to an attempt to charge the administratrix with the personalty of the estate of her intestate left in her hands after the settlement of her administration account, in the same manner as though she had not, since the settlement, in fact parted with the property to those who at the time were at least equitably entitled to it. The claim of the applicant is, that as the administratrix did not observe the preliminaries prescribed in said section before parting with the personal estate, she has not, in contemplation of law, parted with it at all; with the legal result, therefore, that it is still in her hands as undistributed estate subject to any lawful claim the applicant may have upon it to satisfy the newly-arisen claim which he represents. As the good faith of the action of the administratrix in dividing the personal estate as she did to the rightful inheritors of it, and the completed character of that action following the judicial order for distribution and before the existence of the applicant's claim was known, are both amply found, the legal question is squarely raised as to whether or not a strict compliance with one of the two methods of distribution prescribed in the statute is a necessary condition precedent to a division by an administrator upon an intestate estate, comprising personal property other than cash, which shall thereafter relieve him from liability to persons not distributees for such personalty as was in his hands after the settlement of his account and an order of distribution.

When an intestate estate is ready for distribution, all known claims having been paid, and the order for distribution having been made, the only persons who have any interest in it are the rightful distributees. The only persons who have any interest in the manner of the distribution are the distributees,

and the administrator who has the estate in custody and who is charged with the duty of delivering it over to those entitled to receive it; the former, that they may receive their due, and the latter, that he may be protected in his action.   Other parties may, indeed, through subsequently-accruing claims, become possessed of the right to follow the property into its new hands, but until the claims accrue they have no interest which the law then recognizes, either in the estate or in the fact or manner of its division.   The right to make and to have distribution is complete.   The manner of it concerns only the parties interested.

If we study our statutory scheme for the distribution of intestate estates, we shall obtain some light as to its aim, and, incidentally, as to the object and meaning of the particular section under consideration.   The Court of Probate ascertains and designates the heirs and distributees, as was done in this case.   General Statutes, Rev. of 1888, § 628.   If there is found to be only a single heir, or in case the estate consists wholly of cash, the court orders the administrator to deliver or pay over the property to said heir or heirs, taking proper receipts therefor.   General Statutes, Rev. of 1888, § 628.   The provisions of § 629, providing for distribution by distributors, or mutual writing, apply only to estates which are required to be divided among more than one person, and where the subject of division is presumably not susceptible of a simple mathematical division into equal parts, as is cash, but which involves a preliminary valuation.   *Davenport* v. *Richards*, 16 Conn. 310.   The division is one, therefore, which, in the absence of agreement, calls for the exercise of the judgment and discretion of disinterested persons.   The power of distributors to act ends with their division, which is to be recorded. Here the statutes stop.   No provision is made for a return by the administrator of his action, or that he has acted in conformity to the distribution made.

From this analysis of our statutes it becomes quite apparent that the provisions of § 629 have no other purpose than to furnish the necessary statutory machinery for assumed emergencies.   The interests of distributees in undistributed estates are,

theoretically at least, adverse to each other. They may become harmonized by agreement, or they may not. A way or ways should be provided by which, through the arbitration of disinterested persons, or mutual agreement, the rights of all may be finally determined and the action of the administrator in handing over the property effectually safe-guarded. Therefore the provisions; and here we think their object begins and ends. They are exclusive, if the administrator would fully protect himself against all demands. They are not exclusive, if he is willing to assume the risk of payment by himself to the proper parties upon some other evidence of their respective rights. The essential thing is a correct and satisfactory division. That is all the law has in view; all it seeks to accomplish. If that is in fact made, although upon an informal agreement, or even no agreement at all, no one is in a position to equitably complain. *Dickinson's Appeal*, 54 Conn. 224. Those in interest as distributees may create complications if any become dissatisfied, but justice and equity has been done, and equity will guard the result. *Dickinson's Appeal, supra.* It is not so if any rightful distributee is ignored, or any portion of the estate goes astray. In this respect, of course, the administrator necessarily acts at his peril. It is for him to determine whether or not he will assume the risk of irregular action. The law indicates, very properly, a course of safety for him. If he choose another course and his action has the continued sanction of all possible claimants as distributees, as in this case, the aim of the law has been attained in a fair distribution and his reponsibility is at an end. Outside the circle of possible distributees, no one's rights have been affected. No such outsider can have any occasion for complaint, and will not be heard to complain. The result is that which the law was ready and seeking to accomplish; that which it had provided the machinery to accomplish. That the result has been obtained without a resort to the machinery, creates no legal irregularity upon which the law puts the stamp of its disapproval.

It is said that the language of § 629 is mandatory. So it is. The mandate, however, runs to the Court of Probate, and

is, that the court shall, upon application by an interested party, proceed to make distribution. The language of the earlier statutes, as we shall have occasion to notice later, made this quite apparent. In *Dickinson's Appeal*, 54 Conn. 224, we said that such continued to be the effect of the present phraseology. It was also very plainly said that the section was in no other respects mandatory.

This latter case is full of suggestions in support of the construction we have adopted. Although the question now at issue was not directly involved, it is scarcely possible to read the opinion without seeing in it an assumption that the statutory forms of distribution are not exclusive.

The case of *Baxter* v. *Gray*, 14 Conn. 119, is more emphatically to the point. The defendant was sued upon an undertaking contained in an informal mutual distribution. The defendant objected that this distribution was nugatory. This court answered no, and added that it was not intended by the statute "to deprive coparceners or tenants in common of any of the powers which they have at common law to divide or alienate their estates." For other cases giving color to the same view, see *Brown* v. *Wheeler*, 17 Conn. 345, and *Hough* v. *Bailey*, 32 id. 288.

If further support is needed for the view we have taken of the statute, it is found in the history of its evolution. In 1699 it was enacted, after provisions for the settlement of administration accounts, that "the said Court of Probate shall and hereby are fully empowered to order and make a just distribution of surplusage or remaining goods and estate of any such intestate, as well real as personal, in manner following, that is to say, one third part of the personal estate to the wife," etc., "the division of the estate to be made by three sufficient freeholders upon oath or any two of them to be appointed and sworn by said Court of Probate, unless where all the parties interested in any estate being legally capable to act, shall mutually agree of a division among themselves, and present the same in writing under their hands and seals," etc. Colonial Records, p. 307.

In 1786 the provisions appear as follows : " That the Courts

of Probate shall and are hereby fully empowered to order, and make a just division or distribution of all the estate, both real and personal, of such intestate, that shall remain after deducting all debts and charges, whatsoever, payable out of the same, in manner following, that is to say : . . . and the division of the estate shall be made by three sufficient freeholders, upon oath, or any two of them, to be appointed by said Court of Probate: unless all the parties," etc.    Statutes of 1786, p. 54.

In 1821 the language becomes as follows : " The Courts of Probate shall make, and they are hereby empowered to make, a just division or distribution of all the estate, both real and personal, of any person dying intestate, after deducting," etc., " which distribution shall be made by three sufficient freeholders, or any two of them, to be appointed by the Court of Probate," etc., as before.    Revision of 1821, p. 206, § 29.

In 1849 changes in phraseology were made, so that the section read : " The Courts of Probate shall make a just distribution of all the estate, both real and personal," etc., " which distribution shall be made by three disinterested and judicious persons, or any two of them, to be appointed," etc.    Revision of 1849, p. 356, § 46.

Thus the statute remained until 1875, when the revisers, evidently for no other purpose than to simplify the language of the section, put it into its present phraseology.    Revision of 1875, p. 372, § 5.

It will thus be seen that the statute as it was for wellnigh two hundred years, and especially in its early forms, contained little suggestion of any exclusive character to its provisions. It was in the nature of a mandate to the Court of Probate to provide a distribution: not a designation of exclusive methods.    It was the creation of an authority; the conferring of a power upon Courts of Probate to provide a way to meet a legal need.    Such, we think, continues to be the purpose and scope of this ancient enactment in its present form.    It provides legal machinery for those who need it.    It compels no one to use it who has no occasion to do so.    To give the section any other construction would be to give to the act of

the revisers of 1875 too great a significance, and to the language they chose to express the idea an extreme meaning neither required nor justified by the general tenor and purpose of our statutory scheme for the distribution of estates.

It is, however, suggested that there is a principle of public policy involved, to the end that the public records shall disclose, for the benefit of possible claimants, when estates have passed from the hands of administrators. There may possibly be force in this suggestion, although there may also be room for argument as to whether the practical benefits to be thus occasionally attained would compensate for the trouble and expense imposed by a rigid requirement of uniform compliance with statutory modes of distribution. That question, however, is one for legislative consideration and decision. In the law as it is, we see no recognition of such a general policy. Otherwise, why are the methods prescribed not applied to cash estates ? Why is there no provision for a return by administrators of their actual delivery of the distributive shares ? Why nothing akin to the certificates relating to real estate ? It is quite apparent, we think, that the purpose of our statutory scheme is fully met when appropriate machinery was provided for distributions and a definite basis for the action of administrators furnished. The General Assembly has not sought to go further and adopt a principle of public policy such as is above indicated. *Davenport* v. *Richards*, 16 Conn. 310.

In this case the administratrix has, and before the applicant's claim arose had, divided and delivered over the whole estate in her hands for distribution to the rightful distributees, and in a manner to meet their continued sanction. By this delivery the title at once passed to the recipients and is now fully in them. *Hough* v. *Bailey*, 32 Conn. 288. The administratrix has in fact had no title to any estate since that delivery and has none to-day. We are asked to say that while this is true, and true as the result of action in good faith on her part, and while she has accomplished by such action precisely the result the law was aiming to obtain, she is still in construction of law chargeable with the whole amount of

·personal estate distributed by her as estate still in her keeping .and protected by her bond.    We are unable to so hold.

There is no error.

In this opinion the other judges concurred.