JASPER H. BIDWELL, EXECUTOR, *vs.* OLIVER R. BECKWITH.

* Third Judicial District, Bridgeport, October Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

A testatrix, married in 1872, gave her husband, who was also her executor, a life interest in all of her property with remainder in fee to the defendant, and authorized the former to transfer to the defendant the whole or any portion of her estate. She died in 1902, and in 1906 the husband and the defendant agreed to, and did, divide the property between themselves, each taking definite portions of the estate pursuant to a so-called mutual distribution, which embodied the agreement and which was filed in and accepted by the Court of Probate, together with the executor's final account. Included in, but not inventoried as part of, the estate of the testatrix, nor embraced in the division as made, were one hundred

---

* Transferred from first judicial district.

Bidwell *v.* Beckwith.

shares of stock in a Minnesota corporation which the testatrix re-
ceived in 1899 as a legacy. This stock stood in her name, and under
the law of Minnesota carried with it a personal liability for an
amount equal to the par value of the stock. The company became
insolvent, and assessments on such stock were duly made by the
Minnesota court and claims therefor were presented to the executor
here—though not until after the aforesaid division of the estate—
and upon his refusal to pay, a suit was brought by the receiver of the
corporation. The defendant was notified of this suit and requested
to defend it or assist in the defense, but refused to do so. While
it was pending the receiver agreed to accept $3,000 in full settle-
ment, and the executor thereupon applied to and was authorized
by the Court of Probate, after due notice to the defendant, to
compromise the claim upon that basis. In a suit to compel the
defendant to contribute his fair share of said sum it was *held:*—

1. That the claim upon the first assessment, which accrued in 1902,
   was barred by General Statutes, § 326.
2. That the claim for the second assessment, made in 1907, was duly
   presented, and was a valid obligation of the estate.
3. That the acceptance of the bequest of the stock by the testatrix
   created a contract between her and the corporation whereby she
   acquired the rights of a stockholder and became subject to the
   liabilities which the ownership of such stock carried with it; and
   that the contract, being for the benefit of herself and her estate,
   was one which she might lawfully make, although married before
   1877.
4. That inasmuch as her husband had not asserted his statutory right
   to the possession of this stock, nor to the income therefrom, and
   had not inventoried it as a part of her estate, he must be deemed
   to have divested himself of all right to it, so that it virtually became
   the sole and separate estate of his wife.
5. That the receiver's demands for the assessments were "doubtful
   or disputed claims " within § 347 of the General Statutes, a com-
   promise and settlement of which the Court of Probate had authority
   to order.
6. That the defendant could not now attack the jurisdiction of the Court
   of Probate, nor question the validity of the claims ordered com-
   promised.
7. That the disposition of the estate made by the husband and the
   defendant must be treated as a mutual distribution and not a sale.
8. That a distribution of an estate pursuant to the method provided
   in General Statutes, § 310, or in § 395, would protect the adminis-
   trator or executor against any claim of invalidity or want of equity;
   but that if the parties interested chose to make an informal division
   and the executor was willing to take the risk of having the property
   so divided, such division would be as valid as one made under
   the sanction of the statute.

Bidwell *v.* Beckwith.

9. That equity required each of the parties to pay his proportion of the unexpected after-accruing claim; that is, that each should pay a sum proportioned to the value of the estate received by him on the division.

10. That the fact that the compromise ordered by the Court of Probate was still subject to the approval of the Minnesota court which ordered the assessment, did not affect the validity of the claim, nor lessen the duty of the executor to secure funds from the distributees of the estate with which to pay it.

11. That the order authorizing a compromise was not open to attack upon the ground that it included the claim upon the first assessment as well as that upon the second.

12. That there was no merit in the defendant's claim that the real estate, which the husband took in the mutual division, should first be applied to the payment of the receiver's demand.

Two courses, at least, are open to an executor with respect to claims accruing after a distribution of the estate has been made: he may refuse to pay, defend a suit, and, if defeated, compel the distributees to refund to the estate an amount sufficient to satisfy the judgment, or he may require the repayment of an amount sufficient to satisfy the claim and his own legitimate expenses incurred in effecting its settlement.

The rights and obligations of a woman married in 1872 differ largely from those at common law, and are in part the same as those now prescribed in § 591 of the General Statutes.

Argued October 30th, 1912—decided January 15th, 1913.

ACTION by an executor to compel the defendant to contribute to the payment of a debt accruing after an alleged distribution of the assets of the estate, or for equitable relief, brought to and tried by the Superior court in Hartford County, *Curtis, J.;* facts found and judgment rendered for the plaintiff for $1,950, and appeal by the defendant. *No error.*

On July 30th, 1902, Mrs. Bidwell died, leaving a will by which she appointed her husband, Jasper H. Bidwell, plaintiff herein, as executor, and gave to him the life use of her large estate and the remainder to the defendant, with the privilege to her husband of giving the whole or any part of the estate to the defendant.

The plaintiff, pursuant to the will, transferred to

Bidwell *v.* Beckwith.

the defendant certain of the estate of the value of $11,750.

Thereafter, in 1906, the plaintiff and defendant, by mutual agreement, arranged for each of them to take a definite portion of the estate free from the claims of the other party, and that the title and possession of such portion should pass to the party receiving the same.

In execution of such agreement, the defendant made and delivered to the plaintiff a conveyance of his interest in the property to be retained by the plaintiff, and authorized him, as executor, to obtain such orders of distribution of the estate as were necessary under this agreement, and for the final settlement of the estate.

The plaintiff, as executor, then released and delivered to the defendant property of the estate which, together with the property of the estate previously surrendered to the defendant, amounted in value to the sum of $53,272, and Mr. Bidwell then received, as his share under said agreement, property to the value of $34,560.

The plaintiff executor thereupon filed in the Court of Probate said agreement, and what he designated as a "mutual distribution," containing an itemization of the several pieces of property with the valuation thereon as agreed to, as the share of each, together with the expenses and claims paid by the executor.

The court on January 21st, 1907, accepted and approved the account and distribution.

Among the items of Mrs. Bidwell's estate, acquired by her in 1899, was one hundred shares of the capital stock of the Minnesota Thresher Company, then insolvent; and this stock was and remained without value, and was neither included in the inventory of the estate nor in the mutual "distribution" and final account.

The Company was adjudged insolvent by a Minnesota court in 1901, and a receiver was duly appointed and qualified; and in 1902 an assessment of thirty-six per cent. was ordered to be paid upon the outstanding stock (par value $50), by the holders thereof.

No claim for said assessment was ever presented to the executor within the time limited for the presentation of claims.

On June 11th, 1907, said court duly ordered another assessment of sixty-four per cent. to be paid upon the par value of each outstanding share, which amounted on the one hundred shares to $3,200.

The receiver, on October 9th, 1907, presented to the executor a claim against the estate for each of said assessments, amounting in the whole to $5,000.

The plaintiff executor disallowed the claim, and the receiver brought action against him to recover the several assessments, which action is now pending in the Circuit Court of the United States.

Before the last assessment was made or any claim thereon presented to the executor, the "mutual distribution" was consummated and it and the final account of the executor were approved by the Court of Probate.

Upon the institution of the action of Converse, receiver, against the plaintiff as executor of the estate, the plaintiff gave the defendant notice of the pendency thereof and requested him to defend or assist in the defense of the same, which the defendant refused to do. The plaintiff, as executor, thereupon entered to defend the case, and duly plead therein that the claim for the first assessment accrued while the estate was in settlement, and was not presented to the plaintiff as executor either during the time limited for the presentation of claims or within one year after the order of limitation was passed.

Subsequently, negotiations were had for the settlement of the case which resulted in an agreement between the attorneys of the parties that the sum of $3,000 would be accepted by the receiver in the final settlement and satisfaction of the claim. The plaintiff, as executor, thereupon made application to the Court of Probate for authority to compromise and settle the claim for the sum of $3,000. The court, after due notice to the defendant, which he received, and public notice and hearing, found that it was for the best interest of the estate to make the settlement described in the application, and passed an order that the plaintiff, as executor, be authorized to compromise and settle the claim by the payment of the sum of $3,000.

The defendant, upon request, having refused to pay any part of the $3,000 or of $250, the expense of defending the action of Converse, receiver, against the plaintiff, executor, this action was brought to recover the amount he should properly pay toward the settlement of the claim.

Mr. and Mrs. Bidwell were married in October, 1872. In the inventory of the estate was real estate which the defendant transferred to the plaintiff in part consideration of the transfer by the plaintiff to him.

*Joseph P. Tuttle*, for the appellant (defendant).

*William M. Maltbie*, for the appellee (plaintiff).

WHEELER, J. The assessments were lawfully ordered by the Minnesota court and constituted lawful claims against the estate of Mrs. Bidwell, enforceable so far as properly presented. The claim originating in the first assessment, ordered in 1902, against her estate, accrued within the time limited for presenting claims against the estate, and was not presented within that

period to the executor, and so the receiver became "forever debarred of his demand against said estate." General Statutes, § 326.

The claim originating in the second assessment, ordered in 1907, was duly presented against the estate by the receiver, and is a valid obligation of the estate unless, as the defendant insists, Mrs. Bidwell's coverture prior to April 20th, 1877, prevents its collection. Mrs. Bidwell's status, as a woman married in 1872, differed largely from the status attached to that relationship by the common law. Her rights and obligations were in part the same as now expressed in General Statutes, § 591. She was liable upon her contract made for the benefit of herself, or her separate or joint estate. Her acceptance of the bequest of this stock created a contract between her and the company. By force of this contractual relation she became, on the one hand, a joint owner with the other stockholders of the company, and entitled to share in its dividends, when declared, and, on the other hand, she became liable for any part of her share of the capital stock unpaid, upon the faith of which the company conducted its business, and also for the amount of an assessment thereafter arising through an obligation created by law existent at the date of her acquisition of stock imposing upon stockholders a liability equal to the par value of their holding. *Bernheimer* v. *Converse*, 206 U. S. 516, 27 Sup. Ct. Rep. 755. Her acquisition of the stock was for the benefit of herself and her estate. She was ready to share its benefits; her estate must bear its burdens. The claims arising out of these assessments were obligations springing from her contract and created by law, and, so far as duly presented against her estate, were valid claims. Contracts of a woman married prior to 1877, for the benefit of herself, her family, or her estate, have been frequently sustained by us,

and these decisions give good ground for holding these claims obligations of her estate. *Shelton* v. *Hadlock,* 62 Conn. 143, 154, 25 Atl. 483; *Corr's Appeal,* 62 Conn. 403, 409, 26 Atl. 478; *Williams* v. *King,* 43 Conn. 569.

Mr. Bidwell had, by law, the life use of all of his wife's personal property, including these shares of stock. The certificate of stock always remained in her name; her husband never took possession of it nor saw it, thus indicating that he had not, in her lifetime, secured its possession or the right to its income. As executor he never caused it to be inventoried, and never accounted for it; it was in fact worthless, and he, as executor, treated it as such. He administered the property as though it had been held to her sole and separate use. We have not before us the terms of the bequest to Mrs. Bidwell, and do not know whether it was made to her sole and separate use or not. The disposition made by her of this stock, and the failure of the husband to assert his statutory right to its possession and income, and the manner in which he administered his trust, unmistakably indicate that she and he regarded and treated these shares of stock as though owned by a *feme sole.* As a consequence he must be deemed, in law, to have divested himself of his marital statutory rights over this stock, and to have invested her with it as her sole and separate estate. *Coe's Appeal,* 64 Conn. 352, 357, 30 Atl. 140; *State* v. *French,* 60 Conn. 478, 481, 23 Atl. 153; *Williams* v. *King,* 43 Conn. 569, 574. The trial judge in his memorandum says: "But this property was clearly held by her as her own." Obviously he draws his conclusion from the course of conduct of the parties in interest toward these shares of stock, and not from the terms of the bequest to Mrs. Bidwell, as the defendant seems to think.

If coverture had been a defense to these claims and available to the defendant in spite of his failure

to plead it, the fact that the Court of Probate had, upon due application, after actual notice to the defendant, authorized their settlement, and from its order made within its jurisdiction no appeal had been taken, would preclude the defendant from now making this defense. The claims were within the class of "doubtful or disputed claims" (General Statutes, § 347), and the court had authority to order their compromise. The defendant cannot now attack the jurisdiction of the Court of Probate, or question the validity of the claims ordered compromised. *Johnson's Appeal*, 71 Conn. 590, 595, 42 Atl. 662; *Seymour* v. *Seymour*, 22 Conn. 272, 280.

When the court has found that an executor has, without knowledge of an existing claim, distributed a testate estate, or the parties in interest have divided it among themselves in accordance with law, and thereafter an accruing claim is presented against the estate, at least two courses are open to the executor by which to secure his release from this claim. He may, after due defense, await judgment and then compel the beneficiaries to repay into the estate a sufficient amount to satisfy the judgment, or he may compel the beneficiaries to repay a sufficient amount to satisfy the claim and his own legitimate expenses in its settlement. *Davis* v. *Vansand*, 45 Conn. 600, 604; *Mathewson* v. *Wakelee*, 83 Conn. 75, 75 Atl. 93.

Conceding these positions, the defendant asserts that the trial court erred in holding the transaction between him and the plaintiff, as to the disposition of this estate, to be a distribution and not a sale, and hence did not relieve the defendant from liability for after-accruing claims arising out of these assessments. Our statutes, §§ 310, 395, furnish the necessary legal machinery for making a distribution in testate and intestate estates when the law requires it and the

property is other than cash and there be more than one beneficiary, and they also provide the machinery for a mutual division between the parties. These methods, if followed, secure a legal division and protect the administrator or executor against the invalidity and inequity of their making. If the parties make a division which they approve of, and the executor or administrator is willing to take the risk of having the property in his hands so divided, it is as valid as one made under the sanction of the statute. The aim of the law has been attained and a fair division had. *Merwin's Appeal*, 75 Conn. 33, 40, 52 Atl. 484; *Dickinson's Appeal*, 54 Conn. 224, 6 Atl. 422.

Mr. Bidwell and the defendant made such a division, each receiving title to and possession of his share free from the claims of the other, and the defendant agreed that the Court of Probate might enter any orders necessary to carry out the instrument of division, and that his interest in the estate, not transferred to him, should be distributed to Mr. Bidwell. The purpose of the parties was plain; it was not to effectuate a sale, but a division mutually satisfactory to each. The subordinate facts, so far as this record discloses, in the finding and proposed draft-finding, confirm the conclusion of the trial court. The defendant proposes a division of the estate and accepts Mr. Bidwell's offer "in settlement of the estate," and the executor files his final account, heading it "mutual distribution." Though the defendant did say during the negotiations that he would "buy or sell," and referred to an "offer looking to such division," the parties did not intend a sale, as the entire transaction, looked at as a whole, shows. The plaintiff pointedly observes that the defendant should not be heard to object to a proceeding "undertaken at his request, consummated by his participation, and the benefits of which he is now en-

joying." The division was as the parties wished. The claim arose after it had been made. Neither individually nor as executor did Mr. Bidwell have notice or knowledge of it. It would be the height of inequity if he must suffer the entire loss. There is no greater reason why the life tenant should bear the loss rather than the remainderman; it would indeed seem harsh, when the life tenancy is terminated at the suggestion of the remainderman, that the latter should escape and the former suffer the payment of a subsequently arising claim. Neither in the agreement nor in the recital of facts is there basis for the claim that Mr. Bidwell agreed to relieve the defendant of the obligation of this, or any other after-accruing claim. Equity requires each to pay his proportion of the unexpected claim. *Mansfield* v. *Lynch*, 59 Conn. 320, 22 Atl. 313. The defendant has no right in good conscience to retain more than his pro rata share of the estate after all the debts of the estate have been paid.

The defendant assigns as error the holding of the trial court that there was such an agreement between the plaintiff and the receiver as bound the defendant to pay his pro rata share of the claims ordered compromised, before the claims had been reduced to judgment, and the further holding that the authority to compromise given by the Court of Probate was equivalent to a judgment establishing the validity of the claim. The order of the Court of Probate was over a subject of which it had jurisdiction, and made upon due notice to the defendant. So far as the plaintiff individually and as executor, and the defendant, are concerned, the order was a determination of the existence of a claim or claims, at least for the amount named in the order, and as binding upon the parties before the court as any judgment within its jurisdiction. *Johnson's Appeal*, 71 Conn. 590, 42 Atl. 662; *Thomas' Ap-*

*peal*, 85 Conn. 50, 53, 81 Atl. 972; *Mathewson* v. *Wakelee*, 83 Conn. 75, 75 Atl. 93; *Davis* v. *Vansand*, 45 Conn. 600, 604.

It is too late for the beneficiary with notice, or the executor, to withdraw. The receiver has not as yet secured the approval of the Minnesota court, but his failure so to do does not affect the validity of the claim allowed, nor lessen the duty of the executor to secure funds from the distributees of the estate with which to pay it. If that court should finally refuse to approve of the agreement of compromise, the executor will hold this fund as executor for application toward payment of this claim, or in case it is not required for that purpose, for division proportionately among its contributors.

The defendant's liability is also contested because the order of compromise included the claim under the first as well as the second assessment, which was already barred. The authorization did not exceed the claim under the second assessment. The receiver's action was on both claims. The order of compromise was of both claims. Ordinary prudence in the administration of this estate dictated this course; the estate will be the gainer in getting rid of an outstanding claim made the subject of a legal action, as well as the claim under the second assessment, at a cost less than the face of the claim under the second assessment. The defendant, having had full opportunity to contest the order of compromise, cannot now attack it on this or any other ground.

The defendant's last claim is that the executor should apply the real estate as found in the inventory, to the payment of this claim before seeking to compel the defendant to pay any part of it. The defendant overlooks the fact that the real estate in the division went to Mr. Bidwell. Upon a mutual division of an estate,

it would be highly unjust to compel the beneficiary, receiving real estate as part of his share under the division, to pay the whole of an after-discovered claim. It seems equitable, as the court decreed, that each of the parties should pay a part of the claim proportionate to the assets received on the division. As we understand the record, the defendant does not complain of the manner in which the court made this division.

There is no error.

In this opinion the other judges concurred.