JENNIE M. GREENE *vs.* JOSEPH H. KING ET AL.

* Third Judicial District, Bridgeport, October Term, 1925.

WHEELER, C. J., CURTIS, KEELER, MALTBIE and HAINES, Js.

A devisee of real estate derives his title from the will, while an heir-at-law derives his from the statute.

The beneficiaries of an estate, whether testate or intestate, acquire title to the real estate immediately upon the death of the decedent, whereas, in the case of personal property, their full title and right to possession are held in abeyance until the time of distribution which follows payment of all debts and charges and the acceptance of the administration account by the Court of Probate.

The "distribution" of the property of the estate of a deceased person is the division of it among those who are legally entitled to receive it.

Under § 5058 of the General Statutes, the Court of Probate has the power and duty of ascertaining the heirs and distributees of every intestate estate, and of every testate estate in so far as the will is indefinite; and if the estate consists wholly of cash, or if there is but one beneficiary, the court may itself direct a proper distribution.

If a will provides no method of distribution, the procedure is the same as in the case of intestate estates; that is, the Court of Probate may, under § 4961 of the General Statutes, appoint distributors, whose report, when accepted, is binding upon all persons interested; or, by the terms of the same statute, "if the devisees, legatees or heirs shall be legally capable of acting and shall make a division in writing, in the manner provided for the division of intestate estates, such division shall be valid."

A mutual distribution is essentially a contract whereby the items of property to be received by each beneficiary are determined, and each releases to the others his interest in the items to be received by them in consideration of the release by the others of their respective interests in the items to be received by him.

A mutual distribution may be binding upon the parties, though it is informal, or defective in form; and, if the parties are legally capable of acting, and if they do not attempt to dispose of more than they are legally entitled to, any division which they may make will be valid and binding, since they may do with their respective interests as they please.

* Transferred from First Judicial District.

It is essential to the validity of a mutual distribution that all persons having any interest in the property distributed shall be parties to it.

Where property is left by will to a wife, married prior to 1877, "for her own separate use and benefit," and her husband takes no steps to reduce it to his possession and permits her to deal with it as her own, he is not a necessary party to a mutual distribution executed by her and the other beneficiaries.

A will ambiguous or uncertain on its face should be construed in the light of all the circumstances surrounding the testator at the time of its execution in order that the court may, so far as possible, put itself in his position and give such force and effect to his intention as may be consistent with the language used.

In an action which involves the construction of a will, a demurrer should not be interposed to the complaint until all persons having an interest in the questions raised are made parties to the suit, and until all the facts *aliunde* the will, which may aid in its construction, are made to appear.

Argued November 10th, 1925—decided February 23d, 1926.

SUIT for an injunction, an accounting, and for damages, against the executors of the will of Harriet T. Kilbourne, brought to the Superior Court in Hartford County where a demurrer to the answer was filed by the plaintiff and the cause reserved, *Brown, J.,* for the advice and direction of this court. *Superior Court advised to sustain the demurrer and to proceed with the cause according to law.*

*Percy S. Bryant,* with whom, on the brief, was *Morris S. Falk,* for the plaintiff.

*Hugh M. Alcorn,* for the defendants.

HAINES, J.   The plaintiff is a daughter of Mary J. Ackley, deceased, who was one of the four children of Alfred Kilbourne, deceased, and the wife of Elijah Ackley, to whom she was married in March, 1858. Alfred Kilbourne died in 1893 leaving a will which was duly probated in the Court of Probate for the district of East Hartford, by the second and third articles of

which he divided and disposed of his estate as follows:

"I do give devise and bequeath to my beloved wife Jerusha W. Kilbourne all my household goods of every description. Also the one half of all my other estate both real and personal to her and her heirs forever.

"All the rest residue and remainder of my estate, both real and personal I direct shall be divided into ten shares or parts, which I do dispose of in the following way and manner, (viz)—

"To my daughter Mary J. Ackley, the wife of Elijah Ackley I do give one of those shares or parts, to her and her children if she have any, for her own separate use and benefit, but in the event that she die without leaving children then I do give the same to my other children (viz) Alfred E. Kilbourne—Harriet T. Kilbourne and Ellen M. Bishop to them and their heirs forever, they to share the same alike.

"To my daughter Harriet T. Kilbourne I do give three of those shares, or parts to her and her children if she have any for her own use, but in the event of her death without leaving children I do give one-half of the same to her brother and sisters (viz) Alfred E. Kilbourne, Mary J. Ackley and Ellen M. Bishop to them and their heirs forever, to share the same alike.

"To my daughter Ellen M. Bishop the wife of B. P. Bishop, I do give two of those shares, or parts to her and her children for her own separate use, but in the event that she should die without leaving children, I do give the same to her brother and sisters (viz) Alfred E. Kilbourne, Mary J. Ackley and Harriet T. Kilbourne, to them and their heirs forever to share the same alike.

"To my son Alfred E. Kilbourne I do give four of those shares, or parts for his own use to him and his children, but in the event that he should die without leaving any children, then I do give the same to his

three sisters to share the same alike to them and their heirs forever."

There were two codicils, the second of which, dated October 28th, 1887, reads as follows: "On the death of my son Alfred E. I give and bequeath two thirds of the amount I have given to him and his children, to such children of his as may survive him to share alike to them and their heirs and one third thereof to my three daughters to share alike to them and their heirs."

Upon the settlement of the estate, there remained for distribution, real and personal property of the value of $79,606.90.

As her share, Harriet T. Kilbourne received certain described personal property of the value of $11,941.03. She died June 12th, 1923, unmarried and without children, and left a will naming Joseph H. King and Ellen M. Bishop as executors. The will was duly probated, and the executors qualified and now have in their custody and control certain personal property which they propose to distribute in accordance with the will of their decedent unless restrained by order of court.

The plaintiff claims by inheritance through her mother, Mary J. Ackley, an interest in the above estate of her aunt, and by this action seeks damages, and also an injunction restraining the defendant executors from disposing of this property as proposed, for an accounting of income and profits therefrom, for the transfer of her share to her or the payment of the value thereof, and such other relief as equity may provide.

It is admitted that Alfred T. Kilbourne was survived by his widow, Jerusha W. Kilbourne, and by his four children named in his will. Of these only Ellen M. Bishop survives. On October 22d, 1894, while the widow and the four children were still living, the final account of the executors of his estate, and a final supplemental account, were accepted by the Court of

Probate, and on December 22d, 1894, these five legatees executed and filed a "mutual distribution" of the entire estate, which was likewise approved and accepted by the Court of Probate.

This mutual distribution is set up by the defendants in their answer to the complaint, and they contend that it conformed to the terms of the will and gave a sole and separate interest in the several items of property apportioned to each of the five legatees, who executed it. The plaintiff, by demurrer, disputes the validity of the mutual distribution, and this question, by reservation, is presented to this court for its decision.

The demurrer is based upon five principal contentions, which we summarize as follows: (1) that the "mutual distribution" of this testate estate is an attempted substitute for the will, and so without legal effect; (2) that Mary J. Ackley, having been married prior to the 20th of April, 1877, and her husband being then living, was incapable of executing the mutual distribution without his concurring signature; (3) that there was no consideration for the acts of the several signers of the instrument; (4) that by the terms of the instrument Mary J. Ackley attempted to assign an interest which she did not possess; (5) that the mutual distribution attempts to make a disposition of the estate which differs from that provided by the will.

In support of the first of the above positions, counsel for the plaintiff, in brief and argument, seem to make an even broader claim, viz.: that there is no legal sanction, in any event, for a mutual distribution of a testate estate. This claim is unsound.

This "mutual distribution" is essentially a contract, the clear purpose being to divide the various items of property in the estate which they were then holding by a common title in certain undivided proportions under the will. It being determined between them

what items of property each should take, each sought to release his or her interest in those items which were set to the others, so that thereafter each should have a sole and separate title to the items apportioned to him or her and no further interest in the rest of the property.

Assuming that the document they signed was in proper form for that purpose, the agreement of each to release to the others certain property rights was a valid consideration for the corresponding agreement of each of the others. *Rice* v. *Almy,* 32 Conn. 297, 304. Even though such distributions are defective in form, it has been held that the parties to it may be bound by estoppel. *Brown* v. *Wheeler,* 17 Conn. 345, 350, 354. And an informal distribution may yet be valid. *Bidwell* v. *Beckwith,* 86 Conn. 462, 471, 85 Atl. 682; *Hotchkiss' Appeal,* 89 Conn. 420, 427, 95 Atl. 26.

It is familiar law that the will is the source of the beneficiaries' title in the case of testate estates, while in intestate estates the source of title is the statute. Whether the estate be testate or intestate, the legal title to real estate passes to the beneficiaries at once upon the death of the owner, while in the case of personal property the beneficiaries do not have full title or right of possession until distribution, which follows the payment of all debts and charges and the acceptance of the administration account by the Court of Probate. *Roorbach* v. *Lord,* 4 Conn. 347, 348; *Dorrance* v. *Raynsford,* 67 Conn. 1, 34 Atl. 705; *Gray* v. *Goddard,* 90 Conn. 561, 98 Atl. 126.

The "distribution" of the property in the estate of a deceased person is the division of it among those who are entitled by law to receive it. *Hotchkiss' Appeal,* 89 Conn. 420, 427, 95 Atl. 26. After the filing of the final administration account and the ascertainment of just what remains for distribution,

the Court of Probate has the power, and is charged with the duty, of determining the legal beneficiaries, and if a will leaves this indefinite or necessary, the, court's duty is the same in this respect in a testate as in an intestate estate. If the estate is all in cash,, or if there is but one beneficiary, the Court of Probate may direct the administrator to deliver possession to such beneficiary. General Statutes, § 5058; *Merwin's Appeal,* 75 Conn. 33, 36, 52 Atl. 484.

If a will does not provide a method of distribution, the Court of Probate may appoint distributors to make the division, exactly as in the case of intestate estates, and when such distribution is made, the acceptance of the report of the distributors is binding upon all persons interested. *Merwin's Appeal,* 75 Conn. 33, 36, 52 Atl. 484; *Bidwell* v. *Beckwith,* 86 Conn. 462, 470, 85 Atl. 682.

But this is not the only statutory method of accomplishing the distribution of estates, whether they be testate or intestate, for it is further provided, as to testate estates: "If the devisees, legatees or heirs shall be legally capable of acting and shall make a division in writing, in the manner provided for the division of intestate estates, such division shall be valid"; General Statutes, § 4961; and as to intestate estates, if "all the persons interested in said estate shall be legally capable of acting, and shall make and file in said court a division of the same, made, executed and acknowledged like deeds of land," the "division, being recorded in the records of said court, shall be a valid distribution of said estate." General Statutes, § 5060; *Bidwell* v. *Beckwith,* 86 Conn. 462, 470, 85 Atl. 682.

It becomes apparent from reference to these familiar provisions of our law, that the method adopted by the heirs of the testate estate we are now considering, in filing a so-called "mutual distribution," was an en-

tirely legal and proper procedure. Since their title to the property came from the will, save possibly as to the one-half interest referred to in paragraph third, item three, of the will, it is obvious that no party to this "mutual distribution" could dispose of any further interest than the will (and perhaps the statute) gave him. And it follows that, to make the "mutual distribution" completely effective, all parties who received such an interest must join in its provisions. If every party who had an interest thus joined, of course the titles as well as the property itself may be apportioned as they may mutually agree, for if the entire interest in the property is in them, they may, if legally capable of acting, do with their respective interests what they please. Any division joined in by all the distributees, constitutes a valid distribution. *Bidwell* v. *Beckwith,* 86 Conn. 462, 471, 85 Atl. 682; *Hotchkiss' Appeal,* 89 Conn. 420, 427, 95 Atl. 26; *Merwin's Appeal,* 75 Conn. 33, 38, 52 Atl. 484; *Dickinson's Appeal,* 54 Conn. 224, 6 Atl. 422.

The signers of this mutual distribution were the widow, Jerusha W. Kilbourne, and the testator's four children, Ellen M. Bishop, Harriet T. Kilbourne, Mary J. Ackley, and Alfred E. Kilbourne. The paper thus signed divides the property into the respective shares provided by the will. It then attempts a transfer by each to the others of all the interest of the transferor to the estate save as to those items assigned to him or her, with the expressed purpose of giving to each a sole and separate title to the items thus aparted to him or her. Obviously, if these five persons were the only ones who had an interest at the testator's death, in the estate disposed of by the will, a mutual distribution would be held entirely effective and valid, provided each was legally capable of making a transfer of his or her interest and acted upon valid consideration.

Whether there was a valid consideration, we have already answered in the affirmative. The plaintiff contends further that Mary J. Ackley could not convey her interests received under the will, for the reason that she had a husband living, to whom she was married before April 20th, 1877, and his signature was therefore also necessary to carry her interest.

The estate or interest given her by the will was "for her own separate use and benefit," and she could therefore deal with it fully, free from any claim on the part of her husband. *Wagner* v. *Mutual Life Ins. Co.*, 88 Conn. 536, 542, 91 Atl. 1012; *Comstock's Appeal*, 55 Conn. 214, 222, 10 Atl. 559; *Union School District* v. *Bishop*, 76 Conn. 695, 697, 58 Atl. 13. Moreover, the contract she was making was for her own benefit, and the husband had never reduced the property to possession, but permitted her to deal with it as her own. *Turner* v. *Turner*, 90 Conn. 676, 681, 98 Atl. 324; *Bidwell* v. *Beckwith*, 86 Conn, 462, 469, 85 Atl. 682; *Williams* v. *King*, 43 Conn. 569, 574.

The question whether the five signers of the mutual distribution represented all the interests in the estates at the death of the decedent becomes of serious importance, and the answer must be sought in the language of the will and the codicils. Whatever may be said of the former, the language of the second codicil is capable of no other construction than that the testator there created a life estate in the son Alfred, with remainder over in fee upon his death, two thirds to his children surviving him and one third to his three sisters.

It is therefore obvious that there were vested interests thus created which were not represented by the five signatures to the mutual distribution, and it consequently lacked that full representation necessary for

its complete validity, and the demurrer must be sustained on this ground.

An examination of the will suggests the probability that further facts *aliunde* the will should appear of record as an aid in the construction of this will, so that the court may "put itself as far as possible in the position of the testator, in the effort to construe the uncertain language used by him in such a way as shall, conformably to the language, give force and effect to his intention." *Fritsche* v. *Fritsche,* 75 Conn. 285, 287, 53 Atl. 585.

A demurrer should not be interposed to a complaint calling for the construction of a will, unless all the facts *aliunde* the will are made a part of the record and all of the parties in interest are made parties to the action. The omission of these should be supplied by motion. *Fritsche* v. *Fritsche, supra.*

For the reasons stated, the issues involved should not be finally determined until further proceedings are had in the Superior Court by which all parties in interest are made parties to the action and all relevant and material facts *aliunde* the will either made a part of the record, or the parties given an opportunity to prove them.

The Superior Court is advised that the demurrer should be sustained. The cause is remanded to be proceeded with according to law.

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.