******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

MICHAEL BANZIRUK *v.* HARRY A.
BANZIRUK ET AL.
(AC 35883)

Beach, Alvord and Keller, Js.

*Argued October 9, 2014—officially released January 6, 2015*

(Appeal from Superior Court, judicial district of
Litchfield, Danaher, J.)

*William A. Conti*, for the appellant (plaintiff).

*John P. Santucci*, for the appellee (named
defendant).

*Opinion*

ALVORD, J. The plaintiff, Michael Banziruk, appeals from the judgment of the trial court denying his motion to restore a case to the docket that he had withdrawn pursuant to a settlement agreement with the defendants, his brothers, Harry A. Banziruk and Nicholas H. Banziruk.[1] On appeal, the plaintiff claims that the court improperly (1) denied the motion to restore because the agreement between the parties was unclear and ambiguous and could not be enforced, and (2) opened a judgment of default that had been rendered against Nicholas Banziruk prior to the making of the disputed agreement.[2] We affirm the judgment of the trial court.

The court's memorandum of decision and the record reflect the following facts and procedural history. The plaintiff and the defendants, all brothers, are beneficiaries of the estate of their mother, Mary K. Banziruk, who died on September 12, 2003. Initially, the plaintiff and Harry Banziruk were the coexecutors of their mother's estate. In August, 2009, the plaintiff filed a claim against the estate with the Torrington Probate Court for $245,880, which he alleged represented moneys that he loaned his mother and moneys that he expended for, inter alia, maintenance of the family home. Harry Banziruk resigned his fiduciary position as coexecutor the next month in September, 2009.

On May 20, 2010, the Probate Court denied the plaintiff's claim as untimely. The plaintiff then filed an action in Superior Court, appealing from the decision of the Probate Court. At the parties' request, the trial court held at least six pretrial conferences in an attempt to resolve the dispute. Those many efforts were unsuccessful. A trial date was scheduled for February 20, 2013, at which time the plaintiff's counsel and Harry Banziruk's counsel told the court that the parties had reached an agreement. The settlement agreement was placed on the record, and the court canvassed all of the parties to ensure that the terms were acceptable to everyone involved. Basically, the parties agreed that they would sign a mutual distribution agreement[3] in the Probate Court and that they would execute mutual releases relative to any claims against the estate. Pursuant to the settlement agreement, the plaintiff withdrew his action that same day.

On April 1, 2013, the plaintiff filed a motion to restore the case to the docket. He claimed that the "[p]arties have been unable to agree on the exact language of the final agreement." On April 2, 2013, Harry Banziruk filed an objection to the plaintiff's motion on the ground that "an enforceable settlement agreement has been adjudicated on the record." By order dated April 5, 2013, the court ordered the parties to file memoranda identifying "the specific points of disagreement that exist between them relative to [the] draft agreements."

The plaintiff's memorandum stated that the plaintiff, after discussions with the Probate Court, "preferred a compromise of claim[4] rather than a mutual distribution." (Footnote added.) Further, the plaintiff indicated that he believed that his claim should be allowed as to any assets that might later be discovered in his mother's 2003 estate, whereas Harry Banziruk maintained that only the assets listed in the current estate inventory could be reached to satisfy the claim. The plaintiff argued that the settlement agreement could not be enforced because the dispute demonstrated that there had been no "meeting of the minds."

Harry Banziruk filed a memorandum in support of his objection to the motion to restore, in which he stated that the plaintiff failed to abide by the terms of the settlement agreement in the following respects: (1) he failed to prepare a mutual distribution agreement; (2) he filed a compromise of claim for $245,880, which exceeded the fair market value of the estate's assets in the inventory filed on August 18, 2009;[5] (3) he failed to prepare individual releases for the wife and children of Harry Banziruk; and (4) the indemnification agreement that he prepared was ambiguous. Nicholas Banziruk, as a self-represented party, likewise filed a memorandum claiming that the parties had negotiated an agreement that limited the plaintiff's claim to the value of the estate as of August 18, 2009.

The court held a hearing on the plaintiff's motion to restore the case to the docket on June 18, 2013. At that hearing, the court informed the parties that it reviewed the pleadings in the case and that it "very carefully" reviewed the February 20, 2013 transcript of the hearing at which the settlement agreement was placed on the record. The court then asked counsel and Nicholas Banziruk whether all parties previously agreed that they would sign a mutual distribution agreement. Everyone responded in the affirmative. The court next asked whether the parties previously agreed that the plaintiff's claim was to be limited to the fair market value of the estate's assets as listed in the August, 2009 inventory. Nicholas Banziruk and counsel for Harry Banziruk responded in the affirmative, but plaintiff's counsel disagreed that his client's claim was limited to those assets. After additional argument by counsel for the plaintiff and Harry Banziruk, the court stated that it was denying the plaintiff's motion to restore the case to the docket and that a written decision would follow.

On June 25, 2013, the court issued its memorandum of decision on the plaintiff's motion to restore the case to the docket. After reciting the factual and procedural history, and the relative positions of the parties, the court detailed the terms of the settlement agreement as stated at the February 20, 2013 hearing. The court found that those terms were clear and unambiguous. According to the court: "The parties agreed to enter into

a mutual distribution agreement, and the settlement agreement called for the distribution of the assets listed on the estate's inventory. There is no justification for the plaintiff's failure to abide by the terms of the agreement into which he entered. There is no basis for restoring this case to the docket. The motion is denied." This appeal followed.

On appeal, the plaintiff claims that the court improperly denied his motion to restore because "[t]he specific terms of the agreement still had yet to be worked out among the parties." The plaintiff argues that the parties had "come to a general understanding," but that the agreement was unenforceable because "the intent of the parties is not clear and certain from the language of the [agreement] itself, making the [agreement] ambiguous."

In setting forth the applicable standard of review, we must first state the procedural posture of the case before us. This is an appeal from the denial of a motion to restore the plaintiff's case to the docket; it is not an appeal from a judgment enforcing the terms of a settlement agreement. See, e.g., *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993). Accordingly, we must determine whether the trial court abused its discretion when it denied the plaintiff's motion. "The question of whether a case should be restored to the docket is one of judicial discretion." (Internal quotation marks omitted.) *Travelers Property Casualty Co. of America* v. *Twine*, 120 Conn. App. 823, 826, 993 A.2d 470 (2010).

"[General Statutes] § 52-212a[6] is applicable not only to the opening of a case that has proceeded to judgment but also to the restoration of a withdrawn case." (Footnote added.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 196, 884 A.2d 981 (2005). "The principles that govern motions to open or set aside a civil judgment are well established. Within four months of the date of the original judgment, Practice Book [§ 17-4][7] vests discretion in the trial court to determine whether there is a good and compelling reason for its modification or vacation. . . . The exercise of equitable authority is vested in the discretion of the trial court and is subject only to limited review on appeal. . . . We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action." (Emphasis omitted; footnote added; internal quotation marks omitted.) *Yale University* v. *Out of the Box, LLC*, 118 Conn. App. 800, 805–806, 990 A.2d 869 (2010).

In the present case, the court denied the plaintiff's

motion to restore because the parties entered into a settlement agreement to resolve their dispute, the terms of which the court found to be clear and unambiguous. Upon our review of the February 20, 2013 transcript, we conclude that there is support in the record for the court's determination.[8] The parties agreed to enter into a mutual distribution agreement, and plaintiff's counsel referenced the inventory for the estate and described the assets in that inventory. There is no mention whatsoever of the possibility of discovering estate assets in the future.[9] Under these circumstances, we cannot conclude that the court abused its discretion in denying the plaintiff's motion to restore his case to the docket.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] "Withdrawals are analogous to final judgments. . . . Under [the] law, the effect of a withdrawal, so far as the pendency of the action is concerned, is strictly analogous to that presented after the rendition of a final judgment or the erasure of the case from the docket." (Internal quotation marks omitted.) *Sicaras* v. *Hartford*, 44 Conn. App. 771, 775–76, 692 A.2d 1290, cert. denied, 241 Conn. 916, 696 A.2d 340 (1997). "[T]he motion to restore a case to the docket is the vehicle to open a withdrawal, while the motion to open is the vehicle to open judgments." (Internal quotation marks omitted.) *Rosado* v. *Bridgeport Roman Catholic Diocesan Corp.*, 276 Conn. 168, 196, 884 A.2d 981 (2005).

[2] Because, for the reasons that follow, we conclude that the trial court did not abuse its discretion in denying the plaintiff's motion to restore the case to the docket on the ground that the terms of the settlement agreement were clear and unambiguous, we find the plaintiff's second claim to be without merit. The court opened the judgment of default against Nicholas Banziruk prior to its acceptance of the settlement agreement between the parties. "Consent to a stipulated judgment necessarily forecloses reopening of alleged misrulings earlier in the proceedings." *Sparaco* v. *Tenney*, 175 Conn. 436, 437, 399 A.2d 1261 (1978).

[3] See General Statutes § 45a-434 (c) ("[I]f all persons interested in the estate . . . make and file in the court an agreement as to the division of the estate . . . such agreement shall be a valid division of the estate if approved by the Court of Probate. . . ."); see also *Greene* v. *King*, 104 Conn. 97, 101–102, 132 A. 411 (1926) (mutual distribution agreement valid contract).

[4] See General Statutes § 45a-151 (a) (Probate Court "may . . . authorize . . . fiduciaries to compromise and settle any doubtful or disputed claims [against the estate] . . . .").

[5] The August 18, 2009 inventory included the family home valued at $105,000, and various articles of personal property valued at $9224.01, for a total value of the estate of $114,224.01.

[6] General Statutes § 52-212a provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, a civil judgment or decree rendered in the Superior Court may not be opened or set aside unless a motion to open or set aside is filed within four months following the date on which it was rendered or passed. . . ."

[7] Practice Book § 17-4 (a) provides in relevant part: "Unless otherwise provided by law and except in such cases in which the court has continuing jurisdiction, any civil judgment or decree rendered in the superior court may not be opened or set aside unless a motion to open or set aside is filed within four months succeeding the date on which notice was sent. . . ."

[8] The following statements were made by the court and counsel at the February 20, 2013 proceeding:

"The Court: My understanding is that the parties have reached an agreement and the agreement will be put on the record.

"[Plaintiff's Counsel]: Yes.

"[Counsel for Harry Banziruk]: Yes.

"The Court: Who is going to recite the agreement?

"[Counsel for Harry Banziruk]: I will start and—

"[Plaintiff's Counsel]: I'll correct him. . . .

"[Counsel for Harry Banziruk]: The parties intend to enter [into] a mutual distribution in the Probate Court of the town of Torrington in which the

three parties who are seated here are going to be signatories. Therein, they are going to execute mutual releases to one another of any and all claims related to the estate of Mary Banziruk. In addition, [the plaintiff] will release any and all claims related to the estate of Mary Banziruk in reference to the wife and children of Harry Banziruk.

"There will be in that mutual distribution and indemnification arrangement whereby all parties will indemnify and hold one another harmless from any and all claims related to the estate of Mary Banziruk except as to . . . the United States and/or the state of Connecticut tax obligations that might arise from gift giving practices more than fifteen years ago. . . .

"[Counsel for Harry Banziruk]: The claim of [the plaintiff] is being reduced to the fair market value of the inventory file of August of 2009 by [plaintiff's counsel].

"[Plaintiff's Counsel]: Wait, we're accepting—we're accepting in kind those assets on the inventory for the claim.

"[Counsel for Harry Banziruk]: Yes. That's what I tried to say. Did it come out the wrong way?

"[Plaintiff's Counsel]: Well, it's a little different.

"The Court: All right. Go ahead.

"[Counsel for Harry Banziruk]: And . . . this action is going to be withdrawn today with a sixty-day window in order to get the parties to get a mutual distribution prepared, executed by all parties present, approved by the decree of the Probate Court of Torrington, and with a right to [plaintiff's counsel] and [Nicholas] Banziruk [for] a reinstatement of the action in the event of noncompliance."

* * *

"[Plaintiff's Counsel]: Just a couple of things. So in other words, Your Honor, we're going to get the assets of the estate, [the plaintiff] will, which are basically the house at 90-94 Woodbine Street, for which there will be a quitclaim deed. There [are] some miscellaneous checks, unclaimed property, in an approximate amount of $8700 and the personalty within the home. [Harry Banziruk] hasn't made a claim for personalty, and he's not. [Nicholas Banziruk] has some claims that the parties will attempt to resolve. If they're unable, then we'll let the Probate Court decide.

"The Court: All right."

The court then asked each party individually whether he agreed with the terms of the settlement agreement, whether he believed that the terms were fair and equitable, and whether he wanted the court to accept the agreement and enter it as an order of the court. Each party responded in the affirmative.

[9] As previously noted, Mary Banziruk died in 2003. At oral argument before this court, plaintiff's counsel acknowledged that no additional assets have been discovered during the passage of the past eleven years.