## ALFRED S. DICKINSON AND WIFE'S APPEAL FROM PROBATE.

Hartford District, May T., 1886.  PARK, C. J., CARPENTER, PARDEE, LOOMIS AND GRANGER, Js.

The statute (Gen. Statutes, p. 372, sec. 5,) provides that intestate estates shall be distributed by three distributors under oath appointed by the probate court, "unless all the persons interested shall be legally capable to act, and shall make and file in court a division of the same, made, executed and acknowledged like deeds of land, which instrument being recorded in said court shall be a valid distribution of said estate." Held that a division of such an estate made in writing among the persons entitled to it, all being capable to act and all joining, but where the division was not made, executed and acknowledged like a deed of land, and was not filed and recorded in the probate court, did not preclude a regular probate decree ordering a distribution of the estate.

An order for the distribution of a certain amount as the balance left on the settlement of an administration account, and an acceptance of a distribution made under the order, but where by mistake the amount was not large enough, are not necessarily erroneous, but the distribution may be good so far as it goes, and a further order of distribution made for what remains.

A probate decree appealed from remains in full force until the appellate court reverses it; but the probate court ought properly to be advised as to the action of that court, although a judgment affirming the decree is not necessary.

[Argued May 4th—decided October 5th, 1886.]

APPEAL from probate decrees allowing the administration account upon the estate of Electa Perry, deceased, ordering the distribution of the estate and accepting a distribution made under the order; taken to the Superior Court in Middlesex County. The court (*Stoddard, J.,*) reversed the first decree and affirmed the others, and the appellants appealed to this court. The case is sufficiently stated in the opinion.

*C. J. Cole*, for the appellants.—1. The statute authorizing heirs to agree on a distribution of the whole estate does not

affect the right they have at common law to divide or alienate their estates. *Baxter* v. *Gay*, 14 Conn., 122. The object of the statute for the settlement and distribution of intestate estates was to provide a way and means for such settlement and distribution which would protect all the parties, but if the heirs are of full age and agreed, and the rights and claims of creditors do not intervene, there is no reason for the interference of a court of probate. In point of fact a great many estates are fully settled by the heirs among themselves without the intervention of a probate court. Courts do not interfere to set aside the agreements of parties unless it be for fraud or mistake, but rather seek to encourage the amicable settlement of differences, and to confirm and establish such settlements when made. In *Adams's Appeal from Probate*, 38 Conn., 304, the principle which we seek to establish here was sustained. That decision rests partly on the statute, but the theory of the case goes beyond the statute. It was held, under the statute providing for the appointment of guardians by the court of probate, that if a minor of lawful age shall select as guardian a proper person in the judgment of the court of probate, the judge has no discretion in the matter, but it is his duty to approve such choice, and make the appointment accordingly.

2. It is clear that in this case the order of the court of probate has been sufficient to raise a question as to the title to the factory and lands between Eveline R. Dickinson and Noah C. Perry, which must be decided either here or elsewhere. One claims it under the distribution by agreement, the other under the distribution by the court of probate. A court of equity will interpose to remove a cloud upon a title, but should a court of probate having equity powers place a cloud on a title which a court of equity would remove, or should it so make its decree as to carry out the agreement and confirm the acts of the parties, and thus prevent the necessity for further legal proceedings in order to establish the rights of the parties in interest? At all events should not the Superior Court on a review of the case re-

ceive the evidence upon the one side and upon the other, and determine the question as between the parties, and thus prevent circuity of action and simplify the proceedings in the case ?

*W. F. Willcox*, for the appellees.

LOOMIS, J. The statute with regard to the division of intestate estates among the heirs and next of kin provides that " intestate estate, after deducting expenses and charges, shall be distributed by three disinterested persons, or any two of them, under oath, appointed by the court of probate, unless all the persons interested in said estate shall be legally capable to act, and shall make and file in court a division of the same, made, executed and acknowledged like deeds of land; which instrument, being recorded in said court, shall be a valid distribution of said estate." Gen. Statutes, p. 372, sec. 5. The question in the present case is—whether a division of such an estate made in writing among the heirs and next of kin, all being of age and all joining, but where the division is not " made, executed and acknowledged like deeds of land," and is not filed and recorded in the probate court, supersedes or precludes a regular probate decree ordering such a distribution.

It is not important to the question whether deeds have passed between the heirs, releasing to each his agreed share, or whether the matter rests wholly in a written contract. The mere contract would be binding on the parties executing it, though it would of course require an exchange of deeds to make the title complete on the public records. That heirs may make such a contract and such conveyances, and that they will be valid and binding, was settled by the decision of this court in *Baxter* v. *Gay and wife*, 14 Conn., 119, and is no longer an open question. All the heirs could unite in conveying their rights to a stranger, or one heir could convey his interest to a stranger. If this is so they could certainly convey to one another.

But the question is not whether they could convey to

each other; but whether such agreement or conveyances would supersede and exclude a later formal distribution by the probate court. As such formal distribution is not necessary to make a valid title on the public records, where all the heirs have executed and delivered to each other cross-deeds conveying all their interest, it may at first blush seem strange that the law should allow the probate court to incumber its records with nugatory decrees of distribution which cannot be enforced. This anomaly arises from the mandatory terms of the statute and from the inability of the probate court under its limited jurisdiction to hear and enforce the claims of parties founded on contracts made between them after the estate shall have vested in the heirs upon the death of the intestate.

In *Holcomb* v. *Sherwood*, 29 Conn., 418, this court decided that where one of the heirs has conveyed away his interest in the real estate before distribution, the court of probate is to ignore the conveyance, and order the distribution made to the heirs as if no conveyance had been made. The conveyance of course stands good, and operates either by way of estoppel or as an assignment of the heir's interest.

We see no reason why the same rule should not be applied here. The distribution, we think, would ordinarily be made in accordance with the division made by the parties themselves; but if it should not, any heir who should get what by the agreement he was not to take, would be bound to convey to the party who took it under the agreement, and any heir failing to get under the distribution what he had taken by the agreement, could by a proceeding in equity compel a conveyance of the agreed part to himself.

It is clear that, if this were not so, a court of probate would have many questions to try which it could not entertain or dispose of, and which would be entirely foreign to probate jurisdiction as now recognized. If, for instance, there had been a voluntary division by written agreement or by deeds, the question might be made whether the agreement or deeds had not been obtained by fraud or duress, or executed under mistake, or, as suggested by the pleadings

in this case, whether the agreement if originally valid had not been lawfully rescinded, or whether the agreement ought not to be set aside upon equitable considerations. Indeed we can hardly conceive a case where, after such a division had been made by the heirs themselves, any one of the heirs would apply to the probate court for an order of distribution, unless he was prepared to attack the voluntary division upon some of the above mentioned grounds. The recent case of *Hewitt's Appeal from Probate*, 53 Conn., 24, has settled the point that the probate court cannot go into these inquiries. The court of probate has before it the statutory duty of ordering a distribution of an intestate estate, " unless all the persons interested * * * shall make and file in court a division of the same, made, executed and acknowledged like deeds of land; which instrument being recorded in said court shall be a valid distribution of said estate." We think that the court must ignore any division not made in full accordance with this statute requirement.

It is not however to be inferred that the probate court in every case is to disregard such a division and proceed on its own motion to order a distribution. The court will be justified in waiting for some person interested to apply for the order, and, as already suggested, it can hardly be conceived that any heir having made and concurring in such a division would apply for such an order. Where however he does apply, and the order is granted, and on the distribution the voluntary division is ignored, the case becomes one for a court of equity, which, upon the complaint of any party aggrieved, could set aside or establish the conveyances previously made or enforce the written agreement. That court, having full jurisdiction, could hear all the evidence and act finally upon it.

Our conclusion that there was no error in the matters assigned would ordinarily preclude discussion as to other errors. But in this case there is an error and inconsistency in the finding of the trial court that might mislead the probate court in revising the administration account and in ordering another distribution.

It was our first impression that the error could not be fully corrected without a reversal of the judgment of the Superior Court, but on further consideration we have concluded that such reversal may not be necessary after the matter is fully explained. The appeal from probate was from the decrees accepting the administration account, appointing distributors, and accepting their doings. In the reasons for appeal, among other things, the balance of account found due the administrator of $784.61 was particularly mentioned. In schedule *B* the items of the administrator's charges against the estate appear, and they amount to the sum of $1,984.56. Upon this was a credit of $1,200 for rent of a factory in the hands of the administrator and the above balance was obtained by deducting the latter sum from the former.

Now the finding of the Superior Court is as follows:—
" The decree of the court of probate in accepting and allowing the said administrator's account as to all sums and items stated and appearing in schedule *B* in said account, except the last two items therein, to wit, except items of ' funeral expenses, $144.73 ' and ' estimated expenses settling estate, $75.00,' is reversed, and all said items stated and claimed in said schedule *B*, except as above stated and accepted, are found not to be due, and are disallowed and rejected. The sum of the items hereby disallowed and rejected is $564.83, and in all other respects and particulars said decree is confirmed and established."

The meaning of the court as to the items to be deducted cannot well be mistaken. All the items on the debit side of the account are rejected except the last two, which are named with the amounts. Deducting the two items excepted, which amount to $219.73, from $1,984.56, the whole amount, and we have as the correct sum of the items disallowed and rejected $1,764.83. But the court manifestly errs in stating the sum of the rejected items to be $564.83. The court makes no mention of the credit of $1,200 in the hands of the administrator. It is absurd to suppose that what the administrator acknowledged to be in his hands

would be rejected in his favor, and besides, the court rejects all the items except the last two, which are named, and we see that they are the last two items on the debit side of the account, which shows that the deduction has reference to that side of the account. How the mistake on the part of the trial judge occurred it is not necessary to conjecture. We think however the footing given may be rejected and corrected by the more certain data contained in the finding, and that the court of probate may and should revise the account accordingly. Upon such revision the result will be as follows :—The property mentioned in schedule A for distribution amounts to $7,275.28. The probate court allowed the administrator to deduct $784.61 from this sum as a balance due him, but the finding of the Superior Court shows that instead of the estate owing him he owed the estate. His account credits $1,200 as being in his hands; the court allows him only two items, which together amount to $219.73, which being deducted from the $1,200, leaves in his hands belonging to the estate the sum of $980.27, which sum must be added to the amount of property first mentioned (viz., $7,275.28,) which makes the entire amount to be distributed $8,255.55. The amount distributed was only $6,490.67. The difference, viz., $1,764.83, represents the remaining estate which the court of probate must now order to be distributed upon a just revision of the account according to the data given by the Superior Court. This we think may be accomplished without setting aside the distribution already made. The only objection to that distribution is that the amount was not large enough. It may we think be treated as good so far as it goes. One distribution does not preclude the making of another. The property now to be distributed being all in money, there is not the slightest difficulty in doing equal and exact justice to all the heirs without disturbing what they have already. The court of probate should therefore find the additional amount to be distributed and order its distribution.

There are other defects apparent on the record which it may be well to advert to, although, for reasons to be given,

we consider them immaterial. The court, in its finding and judgment, takes notice only of the decree accepting and allowing the administration account, and after specifying what items are to be rejected in that account, it is found that "said decree is confirmed and established in all other respects." The other decrees appealed from, namely, the order of distribution, and the appointment, doings and return of the distributors, are not referred to at all in this connection. But as an appeal from probate does not of itself vacate the decrees appealed from, they remain in full force until the appellate tribunal otherwise determines; but the probate court ought properly to be advised as to the action of the higher court in respect to all the decrees appealed from, although a judgment by the Superior Court affirming them is not strictly necessary. In this case the only objection to the decrees respecting the distribution (other than the amount to be distributed,) was that the distribution already made by the parties would render any further distribution by the probate court illegal and void, and when that objection was overruled it was obvious that the Superior Court intended to affirm the distribution in all respects, except as it was incidentally affected by increasing the amount to be distributed, and, as that was found too small rather than too large, it may stand as so far good.

. The finding of the court may be criticised in another respect. The record shows a departure from the issue raised by the answer to the sixth reason of appeal. The answer admitted a verbal agreement to divide the personal property (except some articles not appraised,) and also the real estate, and that deeds were drawn and executed by all the heirs to consummate the agreement as to the real estate which were never delivered or exchanged, and that in consequence of certain acts in violation of the agreement by the appellants the appellees refused to carry the agreement into effect. But upon the trial, when the appellants offered evidence to prove the alleged agreement, the appellees objected, upon the ground, in substance, that as there was no pretence that the agreement was made and executed in the manner pre-

scribed by the statute the evidence was not admissible. The counsel for the appellants, instead of claiming the evidence as admissible to prove the issue, claimed it upon the sole ground that under the equity powers of the court of probate the agreement, if proved, would supersede any other distribution. If the appellant had then claimed the evidence because it would tend to prove the issue raised by the pleadings, there might have been an amendment to avoid the question. Under the circumstances we think the appellant waived his right (if any he had) to stand on the form of the pleadings. The court very naturally decided the question which the counsel submitted, and we do not think that the party should now be allowed to claim that the ruling of the court in rejecting the evidence was erroneous merely on account of the form of the issue raised by the pleadings.

For these reasons we conclude that there was no error in the judgment complained of.

In this opinion the other judges concurred.