MARIE OAKES HOTCHKISS ET ALS., APPEAL FROM PROBATE.

Third Judicial District, Bridgeport, April Term, 1915.

PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The heirs at law of a decedent, consisting of his widow, two sons and one daughter, mutually agreed in January, 1884, shortly after his death, to divide his property, when ready for distribution, between them-

selves in the same proportions he had indicated in an unsigned will left by him, which they made part of their agreement; and thereupon the children "bargained, sold and conveyed" to their mother in fee all their interest in the estate of their father, except the sum of $35,000 which they reserved to themselves in the amounts and proportions named in the unsigned will, and the mother agreed to transfer the $35,000 in stated amounts to the three children as soon as the estate was ready for distribution. This agreement was signed, sealed, witnessed and acknowledged like a deed, and its provisions were carried out by the widow, who was the administratrix, shortly after the settlement of her administration account in July, 1884; but the agreement was not filed in and recorded by the Court of Probate until October 23d, 1913, after the paper had been found by the daughter in the safety-deposit box of her mother, who died in 1912. In December, 1913, the Court of Probate, proceeding upon the theory that there had been no valid distribution of the estate, appointed three distributors, and from that and other orders the daughter, who was the sole surviving heir at law, appealed. *Held* that the Superior Court was correct in setting aside these orders, upon the ground that there had already been a valid distribution of the estate pursuant to the agreement of all persons who had any interest therein.

A "distribution" under the statute (§ 395) is a mere partition or division of the property among those who are vested by law with its beneficial ownership subject only to the payment of debts and the settlement of the estate. Accordingly, it is not essential that conveyances should be made to each distributee of his portion by all the rest, though a mutual division so made, as in the present case, would comply with the statute if valid in other respects.

While a mutual distribution cannot take effect until after the settlement of the administration account, there is no reason why the parties interested may not—if the nature of the estate and the character of the partition to be made permit it—anticipate the allowance of the administration account and execute the agreement of division in advance.

Such agreement, when carried into effect after the settlement of the administration account, should be received and recorded by the Court of Probate as a valid distribution.

The acceptance and recording of such an instrument implies a finding by the Court of Probate that the persons therein described are the legal distributees of the estate.

In the present case the written agreement of distribution was not presented for record until nearly thirty years after its execution, when three of its four signers were dead. *Held* that inasmuch as it appeared that the division had in fact been made as prescribed in the agreement, and that no other distribution had been ordered in the meantime, the document was properly received and recorded.

Such action of the Court of Probate, unless appealed from, will be assumed to be correct; and the lack of jurisdiction will not be presumed, upon an appeal from other orders, merely because at the time the instrument was filed for record three of its four signers were dead.

The reception and recording of such an instrument constitutes, by the terms of the statute, a valid distribution; and no other or further order of the court is necessary.

In affecting a mutual distribution the parties interested may divide the property as they see fit.

One who intends to attack the validity of a mutual distribution must appeal from the order of the Court of Probate receiving and recording it; otherwise he is in no position to urge its invalidity.

Argued April 14th—decided July 16th, 1915.

APPEALS from orders and decrees of the Court of Probate for the district of New Haven appointing an administrator *de bonis non* on the estate of Henry O. Hotchkiss, late of New Haven, deceased, and disallowing a supplemental administration account and appointing distributors of said estate, taken to and tried together by the Superior Court in New Haven County, *Case, J.;* facts found and judgment rendered reversing and setting aside the action of the Court of Probate in each case, from which the appellees appealed. *No error.*

The ground of the decision of the Superior Court upon which the case turns, is that distribution of the estate had been made and the estate fully settled under a written instrument of division executed like deeds of land and filed and recorded in the Court of Probate prior to the passage of the order appealed from. That instrument reads as follows:—

"Whereas Henry O. Hotchkiss, late of New Haven, Connecticut, deceased, left an instrument purporting to be his last will and testament, but said instrument was not signed and executed by him as a will.

"And whereas we, Mary A. F. Hotchkiss the widow, and Nathaniel S. Hotchkiss, William H. Hotchkiss and

Marie O. Hotchkiss, the three and only children of said Henry O. Hotchkiss, deceased, being the only persons interested in said estate of Henry O. Hotchkiss, and believing that said unexecuted will discloses the real intention of said deceased as to the disposition of his property, and we being desirous of carrying that intention into full effect.

"Therefore we have entered into the following mutual agreement:

"We do each hereby mutually agree in consideration of the promises and agreements of the other parties to this instrument, that when the estate of said Henry O. Hotchkiss is ready for distribution, we will divide the same between ourselves in the manner and in the proportions indicated in said instrument purporting to be the unexecuted will of said deceased, which instrument is hereto annexed and made part of this agreement.

"And we, the said Nathaniel S. Hotchkiss, William H. Hotchkiss, and Marie O. Hotchkiss, the children of said deceased, for the consideration aforesaid, do hereby bargain, sell and convey to our mother, said Mary A. F. Hotchkiss, her heirs and assigns, all our interest in the estate of said Henry O. Hotchkiss, deceased, both real and personal estate, except said sum of $35,000 mentioned in said instrument purporting to be a will, which sum of $35,000 we reserve to ourselves in the sums and proportions named in said instrument.

"And I, the said Mary A. F. Hotchkiss, in consideration of the agreement and conveyances of my said three children above named to me, do hereby agree to transfer to my said three children from said estate the sum of $35,000, as follows, viz: To said Nathaniel S. Hotchkiss, $10,000, to said William H. Hotchkiss, $10,000, and to said Marie O. Hotchkiss, $15,000, such transfer of said sums to my said children from said estate to be made as soon as said estate is ready for distribution.

"And we the said parties to this instrument do hereby mutually agree each with the other for the consideration aforesaid, that we will execute each to the other, such other instruments of conveyance as may be deemed necessary, either in law or equity, to carry this agreement into full effect, and we do hereby bind ourselves, our respective heirs, executors and administrators to the full and complete performance of this agreement.

"In testimony whereof we have hereunto set our hands and seals this 9th day of January, A. D. 1884.

> "Mary A. F. Hotchkiss. (Seal)
> Nathaniel S. Hotchkiss. (Seal)
> William H. Hotchkiss. (Seal)
> Marie O. Hotchkiss. (Seal)

"Signed, sealed and delivered in presence of F. Louise Hotchkiss, Luzon B. Morris.

"New Háven, Connecticut, January 9, A. D. 1884.

"Personally appeared Mary A. F. Hotchkiss, Nathaniel S. Hotchkiss, William H. Hotchkiss, and Marie O. Hotchkiss, signers and sealers of the foregoing instrument, and acknowledged the same to be their free act and deed before me.

> "Luzon B. Morris, Commissioner of the Superior Court for New Haven County."

The other facts sufficiently appear in the opinion.

*Prentice W. Chase* and *A. Heaton Robertson,* for the appellants (Louise Thorndyke Goodno *et al.*)

*Henry Stoddard* and *George D. Watrous,* with whom was *Thomas M. Steele,* for the appellees (Marie Oakes Hotchkiss *et als.*).

THAYER, J. These two cases are appeals to the Superior Court from orders of the Court of Probate for the district of New Haven relating to the intestate

estate of Henry O. Hotchkiss, deceased. The appeals were tried together in the Superior Court, and one finding applicable to both cases was made. By stipulation they have been argued together in this court, and they may be here disposed of as if all the questions had been raised on a single appeal.

The Superior Court set aside the orders appealed from upon the ground that before they were passed there had already been a valid distribution of the estate, and that the former administratrix of the estate, Mary A. F. Hotchkiss, now deceased, widow of the intestate, had turned over to the distributees their respective shares under such distribution, and had fully administered the estate. In our view of the case this conclusion was correct, and it will be unnecessary to consider other facts found by the trial judge which, it is claimed by Miss Hotchkiss, would support the judgment appealed from had there been no valid distribution under the statute.

Mr. Hotchkiss died in December, 1883, leaving, besides the widow before mentioned, three children, Nathaniel S., William H. and Marie O. Hotchkiss, as his only heirs at law. Administration was granted to the widow on January 9th, 1884, and on July 25th, 1884, she filed her administration account, which was accepted and allowed on July 30th, 1884, and showed over $270,000 in real and personal estate on hand for distribution. No distributors were appointed until December 30th, 1913, when the order appointing three distributors of the estate was passed, from which one of the present appeals was taken.

On January 9th, 1884, the widow and the three heirs at law of Mr. Hotchkiss, all of whom were of full age and legally capable to act, made an agreement respecting said estate in the form of a written instrument, made, executed and acknowledged like deeds of land,

and later recorded in the records of the Court of Probate. This instrument is printed in the statement, is referred to in the record, and will hereafter be referred to by us as Exhibit A. The administratrix, shortly after the settlement of her administration account, turned over to each of the heirs at law the amount in cash to be received by them as their respective portions of the estate under said instrument, and later turned over to herself all the rest and residue of the estate, it being understood and intended by all of them that the portion received was received pursuant to and in execution and satisfaction of said instrument and in full settlement of all claims which any of the children had to, or against, the estate, or against Mary A. F. Hotchkiss individually or as administratrix.

Nathaniel S. Hotchkiss died in 1905; William H. Hotchkiss died in 1907; Mary A. F. Hotchkiss died in 1912. The daughter, Marie O. Hotchkiss, survives, and is the executrix of her mother's will and administratrix of the estate of her brother William. The appellant in this court, Louise T. Goodno, is the daughter of Nathaniel S. Hotchkiss and executrix of his will. The instrument, Exhibit A, was filed in the Court of Probate and recorded on October 23d, 1913, having been found by Marie O. Hotchkiss among her mother's papers in her safety-deposit box.

A statute in force at the death of Henry O. Hotchkiss, and still in effect as § 395, reads as follows: "Intestate estate, after deducting expenses and charges, shall be distributed by three disinterested persons or any two of them, under oath, appointed by the Court of Probate, unless all the persons interested in said estate shall be legally capable to act, and shall make and file in court a division of the same, made, executed and acknowledged like deeds of land, which instrument, being recorded in said court, shall be a valid distribution of

said estate." General Statutes (Rev. 1875) p. 372, § 5. The Superior Court held that Exhibit A, filed and recorded in the Court of Probate, was a valid distribution under this statute. It is for the appellant in this court to show that it is not a valid distribution.

It is claimed that the instrument in question is not "made" like deeds of land, but is a mere executory contract, and does not purport to convey or to particularly describe the precise property which each of the parties to it is to receive. Neither of the methods of distribution provided by the statute is intended as a conveyance of property. The heirs and distributees are the beneficial owners of the property of the estate, subject to the payment of debts. The administrator holds the technical legal title only for the purposes of administration. *Woodhouse* v. *Phelps*, 51 Conn. 521, 523. The distributees are, in equity, the owners of the property of the estate after the debts and charges have been paid, as tenants in common. The distribution is a mere partition or division of the property among them. The law gives them title. The purpose of the statute is to divide or distribute what before was held in common. When the statute says that the parties in interest may divide the property, therefore, it does not necessarily intend that there shall be conveyances to each of his portion by all the rest, although a division so made may comply with the statute where all formalities have been complied with. Distributors appointed by the court have no title to convey. When they "set out" to one heir one piece of property and to another another piece, they convey no title; they merely divide or distribute that to which the law gives the heirs title. But if the "division" required by the statute requires a full conveyance to each of the parties in interest of his share by all the rest, we think that the instrument in question fulfils such requirement. It contains, not only an agree-

.ment to divide the estate when ready for distribution, but words of present conveyance, making a division of the estate. The heirs at law convey to the widow all except $35,000, which they reserve to be divided among them in proportions named when the estate shall be settled. The division made was one capable of being made before the administration account was settled. It dealt only with shares to be received in cash by three of the distributees, and the residue of the estate which was to be received by the fourth. These are all sufficiently described to enable the administrator and the court to know with certainty the portion of the prop- erty which each was to receive. A description, though ambiguous, which can be made certain, is sufficient to satisfy the requirements of a deed. When the statute says that the parties may "make" a division made, executed and acknowledged like deeds of land, it means that it shall be by a written instrument signed like deeds of land. This was the language of the section in the 1866 Revision of the statutes. The intention of the parties to the instrument is very clearly expressed: it is to divide the estate after settlement as the intestate, by an unsigned will, had indicated his intention to divide it, and we think that the statutory requirements were fulfilled by it.

It is further claimed that the division was made too early and filed and recorded too late. It is said that a distribution cannot be made until the administration account has been allowed, and it is thus ascertained what property there is for distribution, nor until the court has ascertained and ordered to whom the prop- erty shall be distributed. In *Mathews' Appeal*, 72 Conn. 555, 558, 45 Atl. 170, where a division had been made by the distributees and filed and recorded in court before the administration account had been allowed, it was held that such a distribution could not

oust the Court of Probate of its jurisdiction over the settlement of the estate. There can, of course, be no valid distribution of the estate prior to the settlement of the administration account; and ordinarily a division will not be attempted until the amount of the estate on hand for distribution has been ascertained. Any division of the property by the heirs before the administrator has filed his account will be subject to the final settlement of that account; and a statutory distribution, whether by distributees or by appointed distributors, can only take effect after the administration account has been settled. The Court of Probate cannot properly appoint distributors, nor should it receive and record a distribution made by the distributees, until that event has occurred. But we see no reason why the distributees may not—where the nature of the estate and the character of the division made are such as to permit it—anticipate the allowance of the account and execute this agreement of division in advance. We think that if a division so executed, proper in other respects, should be presented after the administration account has been settled, it should be received and recorded by the Court of Probate as a valid distribution. There is obviously no reason why the persons interested should postpone the making of a division until after the ascertainment of the distributees by the Court of Probate. Such ascertainment of the heirs at law is a mere incident of the distribution. *Mack's Appeal*, 71 Conn. 122, 129, 41 Atl. 242. If, when filed, it does not appear that the proper persons, and all the proper persons, have executed the agreement of distribution, the court should refuse to receive and record it. If the court records it, a finding that the parties therein described are the distributees is implied. The court should not record it unless it appears that all the proper parties have executed it, and this is true whether a previous

ascertainment of the distributees had been reached or not. No practical good, therefore, could result from such previous ascertainment of the distributees.

The statute clearly contemplates that the filing and recording of the distribution will be subsequent to the approval of the administration account. It fixes no time within which it must be made. It ought, doubtless, to be filed more promptly than was done in the present case, but, it appearing that the distribution had been made according to the terms of the instrument, it was proper to receive and record it at any time, provided no other distribution had then been ordered. If, after the administration account was settled, the court had appointed distributors and a distribution had been made by them and left with the administratrix, and she had turned over the estate to the distributees in accordance with its terms, but had neglected to return the distribution or make return of her doings under it to the Court of Probate prior to her death, can it be doubted that, upon proof of these facts, it would be the duty of the court to receive and record that distribution if returned to it by her executrix with a return showing that the estate had been distributed in accordance therewith? It seems beyond question that it would be its duty to do so. And it seems to us to be equally beyond question that it was its duty to accept and record the distribution made by the distributees which had been fully carried out by the administratrix.

It is claimed, further, that the statute requires that a division made by the distributees shall be filed by all of them, and it is said that, as three of them were dead at the time the distribution was filed, this was impossible. It is admitted, however, that the statute will not bear the strict construction which would require that all should be physically present in court at the time of the filing. There is nothing in the record to show that

the Court of Probate did not have jurisdiction to receive and record the distribution. That action of the Court of Probate is not appealed from. Upon an appeal from other orders, that action will be assumed to be correct unless it appears to have been beyond the court's jurisdiction. If the court, having jurisdiction, for some reason improperly received and recorded Exhibit A, the appellant's remedy was by an appeal from that order. It cannot, on this appeal, be assumed that the court acted beyond its jurisdiction because it appears that three of the parties were dead. During their lifetime they may have authorized the filing, and, having received their full shares under the instrument, their deaths would not revoke the authority to file it for record. The burden is upon the appellant upon this appeal to show that the court's action in receiving and recording Exhibit A was beyond its jurisdiction.

To the appellant's claim that the receiving and recording of Exhibit A did not constitute an order of distribution, it seems enough to say that the statute provides that when such a division, proper in substance and form, has been filed and recorded, it shall be a valid distribution. The receiving and ordering this instrument recorded made it a valid distribution, just as receiving and ordering recorded a distribution made by appointed distributors would make that a valid distribution. No further or other order was necessary. It is the duty of the court, in either case, to refuse to receive and record an improper distribution, and failure to do so would give ground for an injured party to appeal.

It is next contended that the distribution is not valid because it does not divide the estate among the distributees in the proportions prescribed by the statute of distributions. General Statutes (Rev. 1875) p. 372, § 6. Assuming it to be true that the division should

have been in accordance with the statute referred to, how can the appellant take advantage of the fact in this proceeding? This appeal is not from that distribution. It was within the jurisdiction of the Court of Probate to receive and record the distribution made by the distributees. Neither of these appeals is from that order of distribution, and the appeals bring up for review only the orders appealed from. *Richardson* v. *Richardson*, 2 Root, 159. Where a mistake was made by distributors appointed by the court, and the court accepted and recorded the distribution which was made, it was held that the Superior Court, in an action brought to correct the mistake, could not correct it, and that the remedy was by appeal from the distribution. *Gates* v. *Treat*, 17 Conn. 388, 392. In the case in hand, if an improper distribution was made, the appellant's remedy was by appeal from the order of distribution. But we think that there is nothing to the claim that the distributees could only divide the estate among themselves in the proportions prescribed by the statute of distributions. When the distribution is made by appointed distributors, it must be in accordance with the statute of distributions so far as that is possible. But exact compliance is scarcely possible. Exact equality of shares is hardly attainable. But when the statute gives the distributees the privilege of making a division among themselves, it is intended that they may divide the property as they see fit. They might, by transfers made immediately after the distribution, so divide it, and we see no reason why they may not so divide it under this statute. As said by the trial court in its memorandum of decision, the privilege would be a barren one if, under it, they can only make a division which none of them may desire, and which leaves them to carry out their real wishes by cross-conveyances subsequently made. We have said that the object of

the statute in question is to provide ways by which, through the arbitration of disinterested persons, or by mutual agreement of all persons interested, the rights of all the distributees may be finally determined and the action of the administrator in handing over the property effectually safeguarded. *Merwin's Appeal,* 75 Conn. 33, 37, 52 Atl. 484. These are the only means provided by statute for fully accomplishing this. But the same case holds that a division made by the distributees among themselves, not in accordance with the statute, is good, except that it fails to safeguard the administrator. And in *Dickinson's Appeal,* 54 Conn. 224, 6 Atl. 422, it is said that this formal distribution under the statute is not necessary to make a valid title, and that the mere contract, without these formalities, would be binding between the parties, and would be enforced between them even after a different division had been made by distributors appointed by the court. The statute says that a distribution shall be made, that is, according to the statute of distributions, by disinterested persons, etc., unless the persons interested in the estate shall make and file a division, etc. It does not say that the division shall be according to the statute of distributions. It does not use the word "distribute." It says only that the division, when made with the formalities prescribed, and filed and recorded, shall be a valid distribution. The words "distribute" and "distribution" have a technical meaning in our probate law. Had the statute intended simply that intestate estates should be distributed according to the statute of distributions, whether the act of division was by disinterested or interested persons, it would, as in the former case, naturally have used the word "distribution" instead of the word "division" in the latter case, and saved the necessity for the explanation that the division, when recorded, shall be a valid distribu-

tion. The apparent purpose of this provision in § 5, p. 372, Revision of 1875, was to provide a way for making agreements of division, which would be effective between the parties without the formalities prescribed, valid as distributions and thus binding upon and safeguarding all parties when duly filed and recorded and not appealed from.

We do not understand that the appellant's third reason of appeal was pressed in case it should be held that Exhibit A was a valid distribution. There having been a valid distribution recorded by the Court of Probate having jurisdiction, the Superior Court properly set aside the order appointing the administrator *de bonis non.* That he or Mrs. Goodno were attacking, by an action in the Superior Court, the distribution which stands unappealed from, and which, therefore, the Superior Court would have no power to change or set aside (*Gates* v. *Treat*, 17 Conn. 388, 392), afforded no reason why the order appointing him should stand.

The numerous requests to change the finding are denied. Most of the findings referred to relate to the questions to which we have referred as raised and argued by the counsel for the appellee in this court, which we have found it unnecessary to consider. The findings, therefore, became unimportant. One or two of the findings complained of relate to the questions which we have considered. These findings are supported by the evidence and admissions of the pleadings.

There is no error.

In this opinion the other judges concurred.