Jon S. Kerin *v.* Frank J. Stangle, Administrator
(Estate of Charles H. Miller)
(13364)

Peters, C. J., Healey, Callahan, Glass and Ment, Js.

Argued October 12—decision released November 29, 1988

*Paul B. Zolan,* with whom was *Catherine A. Marrion,* for the appellant (plaintiff).

*Charles L. Howard,* with whom was *Richard R. Steinmetz,* for the appellee (defendant).

CALLAHAN, J. This is the appeal of an action wherein the plaintiff, Jon S. Kerin, claimed that he was entitled to a decree against Frank J. Stangle, the administrator of the estate of Charles H. Miller, ordering specific performance of an agreement to sell certain of Miller's real estate located in the town of Bloomfield. The matter was tried to the court, *Goldberg, J.,* which rejected

the plaintiff's arguments and refused to order specific performance or grant the plaintiff other equitable relief. We find no error.

The real estate holdings of Charles H. Miller have had a tortuous history of litigation involving not only the property concerned in this action but other properties as well.[1] The facts gleaned from the record, however, that are pertinent to a resolution of this appeal, although unusual, are not particularly complex.[2]

On November 8, 1979, the plaintiff entered into a contract with Harry H. Kleinman,[3] the duly appointed conservator of the estate of Charles H. Miller, an incapable person. The contract called for the plaintiff to purchase for $62,000, certain land, belonging to Miller, located off Old Windsor Road in the town of Bloomfield. The contract contained a provision that the seller was not obligated thereunder until ten days after the requisite probate approval became final and the probate approval was no longer subject to further proceedings. On November 21, 1979, the Probate Court for the district of Hartford approved the sale to the plaintiff for the agreed amount. Subsequently, Beverly Marshall, Miller's daughter, and Tillie Miller, his wife, appealed the order of the Hartford Probate Court to the Superior Court.[4] On February 6, 1980, after a trial de novo, the Superior Court, *Kelly, J.*, determined that it was in the best interest of the incapable's estate to sell the property in question for $62,000, and approved the sale at that price. The Superior Court, however, modified the Probate Court decree by ordering that Marshall or

---

[1] See *Kleinman* v. *Marshall,* 192 Conn. 479, 472 A.2d 772 (1984); *Marshall* v. *Kleinman,* 186 Conn. 67, 438 A.2d 1199 (1982); *Marshall* v. *Kleinman,* 186 Conn. 63, 438 A.2d 1196 (1982).

[2] The facts were stipulated. Only those germane to this case are recited.

[3] Kleinman died on November 29, 1981. Harold F. Keith was appointed successor conservator on January 12, 1982.

[4] The basis of the appeal was that the sale price was inadequate.

her designee have until February 29, 1980, to purchase the property at the approved figure. Marshall appealed the Superior Court judgment to this court.

On January 19, 1982, in *Marshall* v. *Kleinman,* 186 Conn. 67, 72, 438 A.2d 1199 (1982), we held that the evidence presented at the trial de novo in the Superior Court did not reasonably support the "low valuation" accepted and approved by the Superior Court. Consequently, we set aside the judgment of the Superior Court and ordered a new trial. Id., 73. On February 4, 1982, Charles H. Miller died. On September 28, 1982, Frank J. Stangle, the named defendant in this action, was appointed administrator c.t.a., d.b.n. of his estate by the Probate Court for the district of Hartford. On February 15, 1983, Marshall and Tillie Miller withdrew the case remanded by this court without a new trial having been held.[5]

On the basis of those facts the plaintiff postulates that the Superior Court judgment that modified the probate decree was "erased" but the probate decree was not. He reasons, therefore, that the original decree of the Probate Court, approving the sale of Miller's property to him for $62,000, remains in full force and effect. He contends that this decree establishes the necessary probate approval that makes the agreement with Miller's conservator a binding contract that inures to his benefit against the administrator of Miller's estate. He claims, therefore, that he is entitled to specific performance of the contract with Miller's conservator against Miller's administrator. We disagree.

An appeal from a Probate Court to the Superior Court is not an ordinary civil action. *Slattery* v. *Woodin,* 90 Conn. 48, 50-51, 96 A. 178 (1915); *Silverstein's Appeal from Probate,* 13 Conn. App. 45, 52-53, 534

---

[5] The plaintiff, Jon S. Kerin, who, on motion, had been made a party defendant to that action on June 21, 1982, did not object to the withdrawal.

A.2d 1223 (1987). When entertaining an appeal from an order or decree of a Probate Court, the Superior Court takes the place of and sits as the court of probate. *Satti* v. *Rago,* 186 Conn. 360, 365, 441 A.2d 615 (1982); *Stevens' Appeal,* 157 Conn. 576, 581, 255 A.2d 632 (1969); *Dunham* v. *Dunham,* 97 Conn. 440, 443, 117 A. 504 (1922); *Slattery* v. *Woodin,* supra, 51; *Wilson* v. *Warner,* 84 Conn. 560, 564, 80 A. 718 (1911); *Hewitt's Appeal from Probate,* 53 Conn. 24, 35, 1 A. 815 (1885); *Davis's Appeal from Probate,* 39 Conn. 395, 400 (1872). In ruling on a probate appeal, the Superior Court exercises the powers, not of a constitutional court of general or common law jurisdiction, but of a Probate Court. *Slattery* v. *Woodin,* supra; *Tolles's Appeal from Commissioners,* 54 Conn. 521, 524, 9 A. 403 (1886); *Silverstein's Appeal from Probate,* supra, 53.

The function of the Superior Court in appeals from a Probate Court is to take jurisdiction of the order or decree appealed from and to try that issue de novo. *Baskin's Appeal from Probate,* 194 Conn. 635, 641, 484 A.2d 934 (1984); *Satti* v. *Rago,* supra, 364–65; *Stevens' Appeal,* supra, 580–81; *Hotchkiss' Appeal,* 89 Conn. 420, 432, 95 A. 26 (1915); *Silverstein's Appeal from Probate,* supra, 54. Thereafter, upon "consideration of all evidence presented on the appeal which would have been admissible in the probate court, the superior court should exercise the same power of judgment which the probate court possessed and decide the appeal as an original proposition unfettered by, and ignoring, the result reached in the probate court." *Prince* v. *Sheffield,* 158 Conn. 286, 298, 259 A.2d 621 (1969).

Despite these accepted principles concerning the role of the Superior Court vis-a-vis a probate appeal, the plaintiff would have us afford a probate decree some continued vitality after the entry of a judgment in the Superior Court. He opts for a result which would leave the original probate decree standing in the wings in

the event that something goes awry with the Superior Court judgment. We believe that in espousing that position the plaintiff misreads the cases dealing with probate appeals.

It is true that the mere taking of an appeal from a probate decree does not in and of itself vacate or suspend the decree. *Silverstone* v. *Lillie,* 141 Conn. 104, 107, 103 A.2d 915 (1954); *White* v. *Strong,* 75 Conn. 308, 312, 53 A. 654 (1902). As noted in *Livingston's Appeal from Probate,* 63 Conn. 68, 75, 26 A. 470 (1893), "[i]f the appeal had been withdrawn or dismissed in the Superior Court . . . the [probate] decree would have remained valid . . . ." See also *Silverstone* v. *Lillie,* supra, 107; *Merrells* v. *Phelps,* 34 Conn. 109, 112 (1867). That is, the probate decree appealed from continues "in full force" until the appellate tribunal otherwise determines. *Pettee* v. *Hartford-Connecticut Trust Co.,* 105 Conn. 595, 603, 136 A. 111 (1927); *Dickinson's Appeal from Probate,* 54 Conn. 224, 231, 6 A. 422 (1886). But once the appellate tribunal, i.e., the Superior Court, otherwise determines and either modifies or sets aside the decree of the Probate Court, the probate decree is superseded. *Satti* v. *Rago,* supra, 365; *Stevens' Appeal,* supra, 581; *Hirsch* v. *Braceland,* 144 Conn. 464, 469, 133 A.2d 898 (1957); *Silverstone* v. *Lillie,* supra; *Avery's Appeal,* 117 Conn. 201, 205, 167 A. 544 (1933); *White* v. *Strong,* supra.

Sans a withdrawal or a dismissal, we think logic requires that conclusion. We hold, therefore, that once a probate appeal is heard and a judgment rendered in the Superior Court, the Superior Court judgment supplants the probate decree or order. Otherwise, there would arise the incongruous situation of the simultaneous existence of two valid judgments on the same issue, emanating from, what is in effect, the same court exercising the same powers, with one of the judgments held in reserve awaiting developments on the other. We

refuse to countenance such a result. The finding of error and the remand by this court in *Marshall* v. *Kleinman,* supra, and the subsequent withdrawal of that action prior to a new trial in the Superior Court did not reinstate the decree of the Hartford Probate Court authorizing the sale of Miller's land to the defendant.

The reversal of the Superior Court in that case did, however, vitiate the judgment of the Superior Court from which Marshall appealed. "Where this court finds error upon the appeal and remands the case to be proceeded with according to law, the efficacy of the judgment rendered upon the original trial is *destroyed* and a new trial of all the issues in the case is required." (Emphasis added.) *Wendland* v. *Ridgefield Construction Services, Inc.,* 190 Conn. 791, 796–97, 462 A.2d 1043 (1983); see also *O'Donnell* v. *Police Commission,* 4 Conn. App. 196, 197–98, 493 A.2d 270 (1985).

Unfortunately, however, shortly after the publication of our opinion in *Marshall* v. *Kleinman,* supra, and before a new trial could be conducted, the incapable, Miller, departed this vale of tears. Miller's death left his conservator, against whom the remanded appeal was pending, without a ward. That unique state of affairs rendered the remanded probate appeal moot. That conclusion is inevitable since Miller's death terminated the conservatorship; General Statutes § 45-77;[6]

---

[6] "[General Statute (Rev. to 1981)] Sec. 45-77. TERMINATION OF CONSERVATORSHIP. If the court of probate having jurisdiction finds a ward to be capable of caring for himself or herself, the court shall, upon hearing and after notice, order that the conservatorship of the person be terminated. If the court finds upon hearing and after notice which the court prescribes, that a ward is capable of managing his or her own affairs, the court shall order that the conservatorship of the estate be terminated and that the remaining portion of his or her property be restored to the ward. If any ward having a conservator dies, his or her property other than property which has accrued from the sale of his or her real property shall be delivered to his or her executor or administrator. The unexpended proceeds of

*Kleinman* v. *Marshall,* 192 Conn. 479, 483, 472 A.2d 772 (1984); and title to the real estate in question passed to Miller's heirs.[7] There was, therefore, no conservator against whom the appeal could proceed and no real estate for the conservator to sell even if the appeal could somehow have continued.

The upshot of the events that have transpired since the plaintiff first negotiated a contract with Miller's conservator is that there exists no probate approval for the sale of the real estate to him by the conservator. Nor is it possible at this time to obtain such an approval. Since probate approval is an express precondition of a binding obligation,[8] the trial court did not err in denying the plaintiff's request for specific performance or other equitable relief.

There is no error.

In this opinion the other justices concurred.

---

his or her real property sold as aforesaid shall go into the hands of the executor or administrator, to be distributed as such real property would have been. In either case the conservator shall file in the court his or her final account."

[7] "Title to real property passes upon death to the heirs of the owner subject to the right of administration." *Satti* v. *Rago,* 186 Conn. 360, 365, 441 A.2d 615 (1982).

[8] It is also a statutory prerequisite. General Statutes § 45-238; *Elmendorf* v. *Poprocki,* 155 Conn. 115, 119, 230 A.2d 1 (1967).