[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE PROBATE APPEAL
This matter involves an appeal from probate. That court ordered that the defendant mother be named conservator of the plaintiff's wife, who shall be referred to as Mrs. C. It has been said that an appeal of this nature is "not an ordinary civil action . . . when the Superior Court entertains an appeal from a Probate Court, it takes the place of and sits as a court of probate . . . although the Superior Court tries the issues before it de novo, it does so exercising the special and limited jurisdiction conferred on it by the probate appeal statute." Bishop v.Bordonaro, 20 Conn. App. 58, 64 (1989).
In this case the defendant began an action in Probate Court to have herself declared conservator for her adult daughter, Mrs. C., who is married to the plaintiff. The probate action, which was filed in April, 2000, began about two and a half years after Mrs. C suffered a brain CT Page 3646 aneurysm which left the daughter, Mrs. C., with severe deficits with regards to her ability to speak or communicate with others. After the immediate medical crisis, Mrs. C. went to live with her husband in Florida for about a year. She came back to this state for what was planned as a short visit in the summer of 1999, but disagreements developed between the defendant mother and the plaintiff husband stretching over a period of several months. When Mrs. C. indicated to her family and husband that she did not wish to return to Florida, the plaintiff gave up his Florida job and apartment and returned to Connecticut. Upon his return, disagreements again surfaced especially with regard to the plaintiff's right to visit with his wife and even his right to know her whereabouts. As noted, an application for involuntary appointment of a conservator was made by the mother and pursuant to statute, notice of the application was given to the plaintiff and family members. A hearing was held in Probate Court regarding the application. The husband plaintiff now appeals, claiming he was aggrieved by the Probate Court decision that appointed the defendant mother as his wife's conservator.
This court heard the appeal pursuant to § 45a-186 of the General Statutes. When trial began, the plaintiff made an oral motion to dismiss the petition and vacate the order appointing the mother as conservator based upon the allegation that the medical reports relied on by the Probate Court did not comply with the requirements placed upon it by subsection a of § 45a-650 of the General Statutes. This statute sets forth the requirements imposed on probate judges when they are to consider an application for the appointment of a conservator; in fact, the statutory heading reads: "Hearing. Appointment of conservator.Limitations re power and duties." (Emphasis added.)
Basically the plaintiff is raising an issue of subject matter jurisdiction — he appears to argue that since the probate court did not follow mandatory statutory procedures substantive and not procedural in nature, there is really nothing pending before the Superior Court since the Probate Court order is void.
The court opted to hear the evidence on the appeal, however, perhaps not sufficiently obedient to the requirements of subject matter jurisdiction as to what should be done when a motion raising the lack thereof is filed. Gurliacci v. Mayer, 218 Conn. 531, 545 (1991). The court felt that the human consequences of adhering to that rule should be set forth by receiving evidence as to the merits, and it is also true that given the fact that the motion was made on the actual date of the hearing, the appropriate decision on the jurisdictional question was not immediately apparent to the court. This has proven to be a disturbing case to decide, especially in light of the fact that the parties and the CT Page 3647 family are very nice people, each in their own way devoted to the welfare of the subject of this action and the able lawyers involved in this matter are deeply sensitive to the human problems behind the legal questions raised.
The court will now address the issues raised by the motion to dismiss. The issues raised by the motions are indicated, in fact, by the underlined portions of statutory subsection (a) of § 45a-650 which the court will now quote in full: "(a) At any hearing for involuntaryrepresentation, the court shall receive evidence regarding the conditionof the respondent including the written report or testimony by one ormore physicians licensed to practice medicine in the state who haveexamined the respondent within thirty days preceding the hearing."
The report of testimony shall contain specific information regarding the disability and the extent of its incapacitating effect. The court may also consider such other evidence as may be available and relevant, including but not limited to a summary of the physical and social functioning level or ability of the respondent, and the availability of support services from the family, neighbors, community, or any other appropriate source. such evidence may include, if available, reports from the social works service of a general hospital, municipal social worker, director of social service, public health nurse, public health agency, psychologists, coordinating assessment and monitoring agencies or such other persons that the court deems qualified to provide such evidence. "The court may waive the requirement that medical evidence be presentedif it is shown that the evidence is impossible to obtain because of theabsence of the respondent or his or her refusal to be examined by aphysician or that the allege incapacity is not medical in nature. If thisrequirement is waived, the court shall make a specific finding in anydecree issued on the petition stating why medical evidence was notrequired." (Emphasis added.)
In this case, the first medical evaluation was prepared by a Connecticut doctor who last saw the subject of this litigation in November, 1999 some five months before the hearing. The other evaluation was apparently prepared the day before the hearing but was signed by a nurse practitioner and a doctor employed at a Rhode Island medical facility. The form submitted does not indicate when the examination was conducted and the space for the Connecticut medical license number of the doctor is left blank. Since the form signed by the doctor refers to the statute, § 45a-650, directly and the requirement that the physician submitting the report be licensed to practice in the state, that is Connecticut, it must be assumed that the doctor is not so licensed in this state or he would have put in his identification number. It would appear then that the requirements of subsection a of § 45a-650 have CT Page 3648 not been met. However, the lawyer appointed to represent Mrs. C. argues that the court cannot reach that conclusion because on the face of the record it is not apparent that the Rhode Island physician was not licensed to practice in Connecticut. Counsel maintains P.B. § 10-31
requires an affidavit to that effect, if the right of the Probate Court to act without the necessary evaluation is questioned. It is true that no such affidavit was submitted but when a motion to dismiss is before the court, an evidentiary hearing can be held with testimony or exhibits being offered. In effect that was done here before the court actually entertained evidence on the substantive merits of the appeal. The evidence submitted on the motion to dismiss was the very form that has just been discussed and that form was marked as an exhibit; this report as noted not only failed to mention the date of the examination but did not include a Connecticut physician's license number which was clearly indicated as being required on the form. Besides counsel for the defendant concedes in her brief that in any event, both doctors' reports cannot be said to have been completed within the thirty day period required by the statute and counsel or Mrs. C. does not even allude to that failing.[1]
It seems clear to the court, at least, that the requirements for a medical exam under § 45a-650 were not complied with in one or both respects — no examination within thirty days of the Probate Court hearing and/or report prepared by someone who does not practice in Connecticut. This presents a two-level problem. The ultimate question really becomes this: If the Probate Court lacks the power or jurisdiction to issue any order in this case because of its indicated failure to comply with the requirements of § 45a-650, does the Superior Court have jurisdiction to entertain the appeal? or to put it another way, given the fact that on appeal from Probate Court the Superior Court sits as a Probate Court and hears such matters de novo, does the Superior Court have jurisdiction to continue to handle the matter, ordering its own medical examination for example, even though the order of the Probate Court is otherwise void?
The predicate inquiry which must be made before the just-mentioned questions need be answered is whether the failure to comply with the requirements of § 45a-650 as to medical examinations is merely procedural and not a substantive requirement. If it's a substantive requirement of the statutory scheme it would seem that any ensuing order of the Probate Court would be void.
It is difficult to see how the specifically mentioned statutory requirements that a medical examination be conducted by a Connecticut doctor and especially that any examination be conducted within thirty days of any Probate Court hearing can be characterized as anything other CT Page 3649 that substantive.
A Probate Court under § 45a-650 cannot appoint a conservator unless it finds by clear and convincing evidence that a person is "`incapable of caring for (him or herself) or is incapable of managing his or her affairs. See subsection (c) of § 45a-650. These terms are defined in § 45a-644 subsection (c) and (d). There are a broad range of physical and mental conditions referred to in these subsections of § 45a-644
which can be of a long lasting but also of a short duration. A person can be found "incapable" in other words if he or she has "a mental, emotional, or physical condition, resulting from mental illness, mental deficiency, physical illness or disability, chronic use of drugs or alcohol, or confinement" — all of these conditions define "incapacity" under the statutory subsections of § 45a-644.
Conservatorship deprives a person of fundamental rights and powers to act in his or her own behalf, so given the just-mentioned consideration, it cannot be said that the legislature reviewed the medical examination requirements and especially their timeliness as merely procedural in nature given the possibly temporary nature of some of the conditions referred to in § 45a-644. This is underlined by the fact that § 45a-650a specifically states that the medical examination requirement can be waived only under certain circumscribed conditions — none of which the court might add existed here — and if there is a waiver "the (Probate) Court shall make a specific finding in any decree issued on the petition stating why medical evidence was not required." An odd addition to the statute if medical evidence is only of procedural not substantive interest. In light of the important consequences the appointment of a conservator could have on someone's life and their ability to lead it as he or she sees fit, it is not an onerous burden on the Probate Courts to require that they operate on the most current evidence available before finding someone incapable and appointing a conservator. This is especially so since "the probate decree appealed from continues in full force until the appellate tribunal otherwise decides." Kerin v. Stangle, 209 Conn. 260, 265 (1988).
If anything, the case that is cited by the defendant and counsel for Mrs. C. as illustrating matters of mere procedural concern, only underline how the medical evidence requirements subsection § 45a-650a are not procedural, thus, State v. Hyde, 29 Conn. 564 (1861) is cited where it was held that it was only a waivable procedural defect when the application for appointment for a conservator was not signed as the statute required; in Murdoch v. Murdoch, 81 Conn. 681, 687 (1990) it was held that failure to give one form of statutory notice as opposed to another statutorily authorized notice does not render the probate decree void or subject to collateral attack. In Raughtigan v. Norwich Nickel andCT Page 3650Brass Co., 86 Conn. 281, 286 (1912), the court said removal of an executor by Probate Court orders were not open to attack "for any mere irregularity" in the preliminary proceedings leading up to the orders." None of these cases involve directives by the legislature as to the very method by which the Probate Court is to make decisions on the merits or the quality of the evidence it is to entertain to make those decisions. At one point counsel for Mrs. C. argues: "In this case, there is no dispute that Mrs. C. is incapable which is the essential issue in the doctor's report. Whatever defect may be contained in the decree of the Probate Court is minimal and the decree should stand." (Page 3 of January 24, 2001 Brief.) The court cannot accept this proposition — the very thing in dispute is the capacity of this person and if the process by which this determination was made was defective by reasonable legislative fiat, how can a reviewing court ignore it. An agreement by all parties, counsel, including counsel for the person found incapable, cannot permit this court to ignore a legislatively mandated requirement for a finding of incapacity which has a direct bearing on the quality of any Probate Court decision that in fact finds incapacity and forms the predicate for any order as to conservatorship.
The court concludes then that the failure to comply with § 45a-650
requirement as to medical evidence is not merely procedural but substantive and renders the order of the Probate Court in this matter void. What should be the effect of such a finding? — an interesting case in this regard is Ferrie v. Trentini, 111 Conn. 243 (1930). A statute existed which provided that if a child 14 years old or older had no parent or guardian; the Probate Court could notify the minor to appear and choose someone to be his or her guardian. If the court approves the person chosen it could appoint that person as guardian, if the court disapproved of the choice the minor would be permitted to choose another person to be approved in the same way. If the minor refused or neglected to make a choice, the court could appoint someone it deemed proper. Examining the requirements of this statute, the court in Ferrie held that where a Probate Court appointed its own guardian after failing to comply with the statute because it did not give the minor a chance to choose a guardian after a first her choice of guardian was rejected, then the decree of the Probate Court was void as to the guardian it appointed. Id., 251. Here, as in Ferrie, the statutory requirement is one important to the very legislative object sought to be brought about by the Probate Court action. In Ferrie, the object was to give a child some say in the appointment of a guardian, a person that would be very important in that child's life. In this case, the legislative requirement of current medical evidence found by a Connecticut doctor before a finding of incapacity could be made was a method of insuring the integrity of any finding of incapacity before a conservator could be appointed. CT Page 3651
But the foregoing does not resolve the matter because the ultimate question must now be addressed. If the failure of the Probate Court to comply with § 45a-650a makes any order it issued void, does the fact that the Superior Court hears these matters de novo and acts with all the jurisdiction vested in the Probate Court, deprive the Superior Court of jurisdiction to act in this case. In other words, assuming that the Superior Court has the right and power to order the very medical examinations referred to in § 45a-650, why could it not retain jurisdiction, order those examinations, and proceed to entertain the case on the merits despite the fact that the Probate Court order being appealed from did not comply with substantive statutory requirements and was thus void? The simple answer appears to be that a Superior Court does not have that power. Another setting in which the Superior Court is authorized to conduct a trial de novo, appeals from the actions of the Liquor Control Commission, the court said: . . . "this appeal is not atransfer of jurisdiction from the Commission to the Court but a process for invoking the power of the court to decide whether upon the facts (the court) finds proven, the decision of the Commission was unwarranted in law or an abuse of its discretion." Demond v. Liquor Control Commission,129 Conn. 642, 646 (1 943) (emphasis added).
Connecticut Probate Practice, Locke and Kohn (1951) is an older but respected authority and in Vol. 1 at § 43, pp. 79-80, the following remarks decisive of this court, are made "In all cases of courts of limited jurisdiction, their proceedings must be in matters within their jurisdiction or they are void; and when such proceedings are questioned before another tribunal of general jurisdiction, it is competent for them to examine whether the subject matter was within the jurisdiction of such court. Accordingly, decrees of Probate Courts have been held void where 1) the court did not have jurisdiction of the person or res either because (a) the person or thing was not within its territorial limits or subject to its control, or (b) the requisite service upon the persons or the requisite notice was not given, or 2) it did not have jurisdiction of the general subject matter, or 3) it did not have the authority to make the order attempted either because (a) of the nature of the order itself, or (b) of some defect in the procedure leading up to the entry of the order. The decree being void, it can be disregarded in subsequent proceedings or, in other words, "collaterally attacked".
The court concludes that since the order of the Probate Court is void, that order is vacated and the petition is dismissed.
However, the court must admit that it is not altogether pleased with the result it has reached. Would it not be better if we had a statutory scheme which would have allowed this court to remand this matter to the probate court with an order to conduct the appropriate medical CT Page 3652 examinations followed by a new finding on the issue of incapacity. The Probate Court order, under such a statutory scheme would stay in effect until the Probate Court acted in accordance with the Superior Court's remand unless the Superior Court was satisfied that this would not be in the best interest of a person in Mrs. C's. situation. Also, the court would have power, for example, to order visitation between the husband and Mrs. C. The problem now presented, because of the requirements of subject matter jurisdiction, is that this matter will remain in limbo until a new application is filed in Probate Court and/or this court's ruling is successfully appealed.
Under all these difficult circumstances, it seems to the court that the present living arrangements of Mrs. C. should not be altered, because it might be upsetting to her, until a new application is filed and heard in Probate Court but that reasonable visitation between husband and wife be permitted by agreement of the parties. The only consolation the court can take is that if it had not acted on this question of subject matter jurisdiction, and had eventually ruled in favor of the defendant, the whole matter could be reversed on appeal if an Appellate Court found the court's jurisdictional ruling was in error. This would create more disruption and havoc in Mrs. C's. life since such a result would be reached only after many months of Appellate proceedings and such a delay would only create more disruption in Mrs. C's. life as compared to the option of filing a new application in Probate Court where the statutory requirements as to medical examinations would be complied with.
Corradino, J.